838 So.2d 226 (2002)
In re Edward A. WILLIAMSON and Michael J. Miller.
Nos. 2001-IA-00105-SCT, 2001-CA-00578-SCT.
Supreme Court of Mississippi.
December 5, 2002.
Rehearing Denied March 6, 2003.
*229 Edward A. Williamson, Philadelphia, Robert B. McDuff, Alex A. Alston, Jackson, attorneys for appellants.
Lee Davis Thames, Jr., R.E. Parker, Jr., Vicksburg, attorneys for appellee.
EN BANC.
WALLER, J., for the Court.
¶ 1. Bobby G. Reed, Jr., Teresa Powell Reed and Bobby G. Reed, Sr., seek review of the denial of the motion for admission pro hac vice of Michael J. Miller. The circuit court found that Miller, an attorney who is not licensed to practice law in the State of Mississippi, had participated in more than five cases within the immediately preceding twelve-month period, thereby violating M.R.A.P. 46(b)(6)(ii).[1] The circuit court also found Miller and Edward A. Williamson, an attorney licensed to practice law in Mississippi, to be in contempt of court due to an affidavit filed in support of the motion for admission pro hac vice and due to their actions during a deposition of the defendant physician. Williamson and Miller seek review of the denial of the motion for admission pro hac vice and the contempt order. We affirm the denial of the motion for admission pro hac vice and reverse and remand the circuit court's judgments of contempt against Williamson and Miller.

FACTS
¶ 2. Miller, an attorney licensed in Maryland, Virginia and the District of Columbia, *230 maintains an office in Alexandria, Virginia. Even though he is not licensed to practice law in Mississippi, he has advertised his legal services on television in the Greenville/ Greenwood, Mississippi area. The Reed family contacted Miller directly by calling the toll free telephone number mentioned in the advertisement. Miller and his office staff investigated the Reeds' claim and associated Williamson, with whom Miller had previously worked on several Mississippi cases. On behalf of the Reed family, Williamson filed a complaint against Terry McMillin, M.D., alleging medical malpractice. In that complaint, which was signed by Williamson but not by Miller, Miller's name and address were placed under Williamson's name and address as follows:
 Respectfully submitted,
 (signature)
 Edward A. Williamson
EDWARD A. WILLIAMSON
ATTORNEY AT LAW
POST OFFICE BOX 588
PHILADELPHIA, MISSISSIPPI 39350
XXX-XXX-XXXX
MSB# 7276
MICHAEL J. MILLER
MILLER & ASSOCIATES
809 CAMERON STREET
ALEXANDRIA, VIRGINIA 22314
1-800-882-2525
WASHINGTON D.C. BAR NO. 397689
¶ 3. R.E. Parker, an attorney who was retained to represent Dr. McMillin, filed an answer and a motion requesting the circuit court to strike all of the pleadings[2] since Miller, a foreign attorney, had not complied with M.R.A.P. 46 and was therefore guilty of the unauthorized practice of law.[3] Williamson then filed a motion for *231 Miller's admission pro hac vice; however, he failed to attach an informational affidavit as required by M.R.A.P. 46(b)(4). Parker again asked the circuit court to strike all of the pleadings. Miller then filed an informational affidavit and certificate. Miller's affidavit, in which he acknowledged his involvement in two other Mississippi cases over the past twelve months, stated as follows:
Affiant has appeared pro hac vice in the matter of Ford v. Baker, in the Circuit Court of Washington County, Mississippi and by agreement with defense counsel in this action in the case of La'Shantton Morris v. Gerald Rankin, M.D., et al., Cause No. 99-0181-CI, in the Circuit Court of Warren County in the last twelve months.
¶ 4. During a telephone conference on the motion for admission pro hac vice and the motion to strike, Parker informed the circuit court that within the last twelve months Miller had been involved in several other Mississippi cases not listed in the affidavit. The court directed Miller to file a second affidavit pursuant to M.R.A.P. 46 and list all the cases in which Miller had applied for admission pro hac vice or in which he had an interest.
¶ 5. Miller's second informational affidavit, which was filed on September 7, 2000, and which acknowledged other cases not previously disclosed, provided as follows:
Affiant has appeared pro hac vice, has filed a motion to appear pro hac vice or has an interest in the following cases filed in the State of Mississippi:
A. Cases concluded more than 12 months from this date:
1. In the matter of Ford v. Baker, the Circuit Court of Washington County, Mississippi;
B. On-going cases in which Michael Miller has been admitted to practice pro hac vice:
1. La'Shantton Morris v. Gerald Rankin, M.D., et al., Cause No. 99-0181-CI, in the Circuit Court of Warren County;
C. On-going cases in which Michael Miller has filed a motion to appear pro hac vice. However, no Order allowing his admission has been filed by the Court:
1. Bobby G. Reed, Jr., et al. v. Terry Y. McMillin, M.D., Cause No. 20-0042CIIn the Circuit Court of Leflore County, Mississippi;
2. Edward Jakarrious Williams, et al v. Carl Reddix, M.D., et al.Cause No. XXX-XX-XXXXCIVIn the Circuit Court of the First Judicial District of Hinds County, Mississippi;
3. Keyosha Suber, a minor, et al. v. James R. Beckham, M.D., In the Circuit Court of Washington County, Mississippi; and
4. Annette Williams v. American Home Products Corporation, et al., Cause No.2000-207In the Circuit Court of Holmes County, Mississippi;

*232 D. On-going cases in which Michael J. Miller has an interest, but no motion for pro hac vice admission has been filed:
1. Janice Washington, et al. v. American Home Products Corporation, et al., Cause No.2000-292, In the Circuit Court of Holmes County, Mississippi; and
2. Ruthie Amos, et al. v. American Home Products Corporation, et al., Cause No.2000-293, In the Circuit Court of Holmes County, Mississippi.
¶ 6. The circuit court denied the motion for admission pro hac vice, finding that Miller had "appeared in six different cases during the last twelve months, and the present case would constitute the seventh," "appending [one's] name to pleadings in a cause constitutes an appearance as counsel of record as contemplated by Rule 46," and that Miller had engaged in the unauthorized practice of law.
¶ 7. Dr. McMillin's deposition was scheduled for the day following the entry of the order denying the motion for admission pro hac vice. Prior to the deposition, Williamson spoke to the circuit judge's law clerk, seeking permission for Miller's presence at the deposition.[4] The law clerk told Williamson that the circuit judge would allow Miller to attend the deposition, but that Miller could not participate in the deposition. This oral instruction was never reduced to a written order.
¶ 8. During the deposition, Parker observed Miller taking notes and placing them on a flight bag which was underneath the table. When Williamson reached down for the notes, Parker objected and accused Miller of violating the circuit court's order. Miller stated that he had merely been taking notes and placing the notes on the floor. He denied that he had attempted to hand the notes to Williamson under the table. Williamson denied that he had ever had the notes in his hands. Parker called the circuit judge, who ordered Miller to leave the deposition.
¶ 9. The "notes" Miller took at the deposition are as follows:
Questions for Dr. McMillin
i. What publications in the field of Ob-Gyn do you read (or subscribe to)
ii. What were the contra indications to performing a Caesarian section on Theresa Reed
iii. Prior to the birth of Bobby Reed did you review any prior birth records for other kid
iv. Prior to 37 weeks gestation you knew this was a male fetus
v. Agree the pregnancy with Bobby Reed, Jr., was the first pregnancy where Theresa Reed was diagnosed as a gestational diabetic?
vi. Do you have privileges at any other hospital other than Greenwood-Leflore
¶ 10. Dr. McMillin filed a motion for contempt which accused Miller of violating the circuit judge's instructions at the deposition, as well as failing to mention another Mississippi case in which Miller had participated. Dr. McMillin did not accuse Williamson of contempt.
¶ 11. In response to the motion for contempt, Williamson averred that Miller did not participate except to respond to accusations of participation and that the three pages of notes fell on the floor:
2. On the 13th day of September, 2000, Michael Miller attended, with this court's permission, the depositions of the plaintiff and Dr. McMillin at which Attorney *233 Williamson appeared as counsel for the plaintiffs. Mr. Miller did not appear at those depositions as counsel for the plaintiffs and did not participate in those depositions. He did respond to defense counsel's accusation during the deposition that he was participating through taking notes by urging defense counsel to contact this court if he felt it necessary.
* * *
3. Mr. Miller had notes with him during the deposition which were made prior to receiving this court's order. He took additional notes during the deposition. During the deposition, three pages containing the notes attached to the motion for contempt fell to the floor. During the deposition, when defense counsel accused Mr. Miller of violating this court's order with the notes, Mr. Miller stated on the record that he would provide the court with copies of the notes he took during the deposition.
¶ 12. During a hearing on the motion for contempt, Williamson and Miller changed their stories and testified that Miller was merely acting as a paralegal and not as an attorney, and that a paralegal, though not licensed to practice law, could suggest questions to the attorney taking the deposition. The circuit court granted the motion for contempt, finding, among other things, that: (1) Miller was practicing law without a license; (2) Miller made false representations to the court in the affidavits; (3) Miller blatantly and willfully disobeyed the court's order barring his participation at the deposition by writing down questions and handing them to Williamson; and (4) Miller and Williamson repeatedly misspelled the name of the defendant in the Ford v. Barker case, making it difficult for the circuit court to ascertain the correct facts. The circuit court found that both Miller and Williamson were in contempt of its orders.[5] Punishment was the imposition of a cost bill, jointly and severally, to be submitted by Dr. McMillin.
¶ 13. Miller and Williamson seek review of the denial of the motion for pro hac vice and of the contempt order.

DISCUSSION

I. WHETHER THE CIRCUIT COURT PROPERLY DENIED THE MOTION FOR ADMISSION PRO HAC VICE.
¶ 14. We review questions of law de novo. Donald v. Amoco Prod. Co., 735 So.2d 161, 165 (Miss.1999). Findings of fact will not be overturned where they are supported by substantial evidence in the record, unless the trial judge abused his discretion or his findings were manifestly wrong or clearly erroneous. Sawyer v. Brandon, 825 So.2d 26, 34 (Miss.2002); Tricon Metals & Servs., Inc. v. Topp, 516 So.2d 236, 238 (Miss.1987).
¶ 15. Attorneys not licensed in Mississippi must follow the guidelines outlined in M.R.A.P. 46 to have limited practice privileges, pro hac vice, in Mississippi courts. An attorney seeking admission pro hac vice must be in good standing of the bar of another state and must be of good moral character. M.R.A.P. 46(b)(1). He must associate an attorney who is a member in good standing of the Mississippi Bar. M.R.A.P. 46(b)(3). He must file an informational affidavit before the particular *234 court for which practice privileges are desired. M.R.A.P. 46(b)(4). The informational affidavit must include a list of other Mississippi cases in which the attorney has appeared pro hac vice within the preceding twelve months, including the style of each cause and the name of each court. M.R.A.P. 46(b)(6)(ii).
¶ 16. We strictly construe Rule 46(b)(6)(ii) and have affirmed the dismissal of a civil action because the foreign attorney who filed the complaint did not associate local counsel and failed to supply a timely and correct informational affidavit in accordance with the rule. Taylor v. Gen. Motors Corp., 717 So.2d 747, 749 (Miss.1998).
¶ 17. M.R.A.P. 46(b)(6) also prohibits a foreign attorney from appearing pro hac vice if the foreign attorney has engaged in the "general practice of law" in this state without being properly admitted and licensed to practice law in this state. M.R.A.P. 46(b)(6)(i). For purposes of the rule, the "general practice of law" is defined as "appearances as counsel pro hac vice before any court or administrative agency of this state on more than five (5) occasions in any 12 month period." M.R.A.P. 46(b)(6)(ii). The "practice of law" has been defined to be as little as advising a person of his legal rights or exercising discretion in drafting documents:
[The] practice of law includes drafting or selection of documents, the giving of advice in regard to them, and the using of an informed or trained discretion in the drafting of documents to meet the needs of the person being served. So any exercise of intelligent choice in advising another of his legal rights and duties brings the activity within the practice of the legal profession.
Darby v. Miss. State Bd. of Bar Admissions, 185 So.2d 684, 687 (Miss.1966) (citation omitted).

A. WHETHER AFFIXING ONE'S NAME TO A PLEADING CONSTITUTES AN "APPEARANCE" WITHIN THE MEANING OF M.R.A.P. 46(b)(6).
¶ 18. Miller's name and address were included on pleadings in at least seven cases. In the case sub judice, this information was placed on the complaint, a response to requests for admission, a notice of deposition of Dr. McMillin, a subpoena duces tecum directed to a hospital records custodian, and a rebuttal to the response to the motion for admission pro majority vice for Miller. Because of the inclusion of Miller's name and address on the pleadings, Parker served both Williamson and Miller with copies of pleadings he filed with the court.
¶ 19. Miller and Williamson contend that the inclusion of Miller's name, address, phone number, etc., to a pleading signed and filed by a local attorney does not constitute an appearance as the term is used in M.R.A.P. 46. They argue that if providing such information is deemed to constitute an appearance, local attorneys would be discouraged from consulting foreign attorneys who have greater knowledge of complex fields of litigation.
¶ 20. Parker contends that the inclusion of Miller's information on the complaint is an appearance and a representation to the court and to other attorneys that Miller is an attorney of record. The circuit court agreed and held that "appending one's name and address on a Complaint constituted an appearance as counsel of record as contemplated by Rule 46." Accordingly, the circuit court concluded that Miller was guilty of practicing law without a license.
*235 ¶ 21. Our rules of civil procedure require that counsel be identified on the pleadings. The comments to M.R.C.P. 11, Signing of Pleadings and Motions, state that "Counsel's office address should appear on all pleadings and other papers." An "appearance by attorney" is defined as holding oneself out to be representing a client. "Appearance" is defined as "an act of an attorney in prosecuting an action on behalf of his client. Document filed in court in which attorney sets forth fact that he is representing a party to the action." Black's Law Dictionary 712 (6th ed.1990). Affixing a name to pleadings has been interpreted as an intent to be involved in the litigation:
The purpose of resident counsel joining with nonresident counsel is obvious. It is to insure that the nonresident counsel will be associated with a counsel involved in the litigation who is knowledgeable and familiar with the laws and practices of this state. By permitting his name to be affixed to a pleading or brief, a resident lawyer represents to this court that he is a part of the litigation and a counsel of record. Accordingly, he should be held accountable for the transaction of the litigation to the full extent as if there were no nonresident counsel. A resident lawyer should not permit his or her name to be affixed to pleadings or briefs unless he or she intends to be involved in the litigation and be familiar with the actions taken by nonresident counsel.
Emry v. Am. Honda Motor Co., 214 Neb. 435, 334 N.W.2d 786, 793 (1983).
¶ 22. We take judicial notice from the amici briefs submitted in this case[6] that it has been the practice of some attorneys in this State to include a foreign attorney's name on pleadings without intending for the foreign attorney to make an appearance. Because we have not previously addressed what constitutes making an appearance, we take this opportunity to narrow the definition of making an appearance. In the future, attorneys are hereby noticed and cautioned that a foreign attorney will be deemed to have made an appearance in a Mississippi lawsuit if the foreign attorney signs the pleadings or allows his or her name to be listed on the pleadings. A foreign attorney may further make an appearance in a Mississippi court by physically appearing at a docket call, a trial, a hearing, any proceeding in open court, at a deposition, at an arbitration or mediation proceeding, or any other proceeding in which the attorney announces that he or she represents a party to the lawsuit or is introduced to the court as a representative of the party to the lawsuit. These actions require that the foreign attorney be admitted pro hac vice and activate the prohibition of M.R.A.P. 46(b)(6)(ii).

B. WHETHER MILLER ENGAGED IN THE UNAUTHORIZED PRACTICE OF LAW.
¶ 23. Even excluding the fact that Miller's name and address appeared on the pleadings, we find that Miller's actions constituted practicing law in Mississippi. All of the cases listed in the affidavits, as well as the case sub judice, originated from Miller's office and were "his" cases. The cases came directly to Miller's office by way of a 1-800 number advertised in Mississippi. Miller reviewed the cases with his staff of two nurses, a doctor, a surgeon, and six lawyers to determine whether the claim was meritorious. Once a contractual *236 relationship with the client was established, Williamson filed a complaint in the appropriate Mississippi court. Miller conceded that he and Williamson jointly worked on all of the cases and that he normally did not put his name on a pleading unless he had decided to enter an appearance.
¶ 24. Miller supplied all the substantive medical expertise to the medical malpractice cases he shared with Williamson. In one case, Williamson did not feel sure of himself with the medical evidence, and so, with the consent of opposing counsel, and without filing a motion for admission pro hac vice, Miller conducted the deposition of the physician defendant.[7]
¶ 25. Miller and Williamson contend that the only appropriate authority for addressing a charge that Miller engaged in the unauthorized practice of law is the Mississippi Bar and not the courts. They further argue that Miller was serving only as a means of determining whether any of the claims had merit, that he merely "screened the case and provided Williamson with technical advice on the medical aspects of it." If the claims had merit, Williamson prepared and filed the pleadings. It was only when Miller was allowed to appear pro hac vice that he deposed experts. They also contend that numerous lawyers do this type of activity regularly without being accused of engaging in the unauthorized practice of law.
¶ 26. In Darby, a chancery court clerk was found guilty of engaging in the unauthorized practice of law when she prepared deeds, deeds of trust, notes, bills of sale, and real property title certificates. 185 So.2d at 687. The Kansas Supreme Court has held that performing legal services in any legal proceeding through the various stages of litigation constitutes the practice of law:
[T]he practice of law is the doing or performing of services in a court of justice, in any matter depending therein, throughout its various stages, and in conformity to the adopted rules of procedure. But in a larger sense it includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be depending in a court.
* * *
[O]ne who confers with clients, advises them as to their legal rights, and then takes the business to an attorney and arranges with him to look after it in court is engaged in the practice of law.
State ex rel. Stephan v. Williams, 246 Kan. 681, 793 P.2d 234, 240 (1990) (citations omitted).
¶ 27. Miller clearly conferred with clients, advised them as to their legal rights and then engaged the services of another attorney to litigate the claim. He procured each and every client through commercials on the television. Once their claims were investigated by Miller and his office staff, he contacted Williamson. Miller characterized these cases as "his" cases. He continued to advise Williamson on the case and, in the case sub judice, attended a deposition. Miller also had a financial interest in the outcome of these cases. Although the Court has held that although "the practice of law does not necessarily depend on whether one charges or receives a fee for services performed, the element of compensation may be a factor in determining whether the *237 specified conduct constitutes the practice of law." Darby, 185 So.2d at 687. Miller's name appeared on the complaint and other pleadings. The combination of all of these factors supports a finding that Miller had engaged in the unauthorized practice of law.
¶ 28. We therefore affirm the circuit court's denial of the motion for admission pro hac vice, and we refer this matter to the Mississippi Bar for further proceedings.

II. WHETHER THE CIRCUIT COURT PROPERLY FOUND MILLER AND WILLIAMSON IN CONTEMPT OF COURT.
¶ 29. We carefully examine contempt convictions. Melvin v. State, 210 Miss. 132, 48 So.2d 856 (1950). Generally speaking, contempt matters are committed to the substantial discretion of the trial court which, by institutional circumstance and both temporal and visual proximity, is infinitely more competent to decide the matter than the Supreme Court. Cumberland v. Cumberland, 564 So.2d 839, 845 (Miss.1990). When dealing with contempt matters, we must first determine whether the alleged contempt is either civil or criminal in nature. If the contempt is civil, the proper standard utilized for review is the manifest error rule. Id. If the contempt is criminal, then we will proceed ab initio and will determine on the record whether the person in contempt is guilty of contempt beyond a reasonable doubt. Id. If the primary purpose of the contempt order is to enforce the rights of private party litigants or enforce compliance with a court order, then the contempt is civil. Purvis v. Purvis, 657 So.2d 794, 796 (Miss.1994). The contemnor may be jailed or fined for civil contempt; however, the contemnor must be relieved of the penalty when he performs the required act. Id. at 796-97. Criminal contempt penalties, on the other hand, are designed to punish the contemnor for disobedience of a court order; punishment is for past offenses and does not terminate upon compliance with the court order. Common Cause of Miss. v. Smith, 548 So.2d 412, 415-16 (Miss.1989).
¶ 30. It is clear that in the case sub judice, the contempt is criminal in nature. See, e.g., Newell v. Hinton, 556 So.2d 1037, 1044 (Miss.1990) ("[A] criminal contempt proceeding is maintained solely and simply to vindicate the authority of the court or to punish otherwise for conduct offensive to the public in violation of an order of the court"). The circuit court held both Miller and Williamson in contempt for their noncompliance with its order regarding their actions at Dr. McMillin's deposition and their alleged misrepresentations to the court in the two M.R.A.P. 46(b)(4) affidavits. Accordingly, we proceed ab initio and determine on the record whether Miller and Williamson are guilty of contempt beyond a reasonable doubt.
¶ 31. There are two forms of criminal contempt, direct and constructive:
Direct criminal contempt involves words spoken or actions committed in the presence of the court that are calculated to embarrass or prevent the orderly administration of justice. Punishment for direct contempt may be meted out instantly by the judge in whose presence the offensive conduct was committed....
Unlike direct contempt, constructive contempt involves actions which are committed outside the presence of the court ... In the case of constructive criminal contempt, we have held that defendants must be provided with procedural due process safeguards, including a specification of charges, notice, and a hearing.
*238 Moulds v. Bradley, 791 So.2d 220, 224-25 (Miss.2001) (citations omitted). The allegations contained in the motion for sanctions were committed outside the presence of the court; therefore the acts constituted constructive criminal contempt and procedural due process safeguards attached.
¶ 32. The circuit court held Williamson and Miller in contempt for deliberately trying to mislead the court by not filing a complete and factual affidavit in support of the motion to admit Miller pro hac vice; for violating the court's order about the conduct of the deposition; and for trying to conceal their actions at the deposition.
¶ 33. The judgment of contempt against Williamson and Miller must be reversed. First, Williamson was not given notice that the contempt hearing would address any actions he engaged in or that a judgment of contempt might be entered against him. His right to due process was therefore violated. Secondly, Judge Hines should have recused himself from conducting the contempt charges against Williamson and Miller. In Terry v. State, 718 So.2d 1097, 1104-05 (Miss.1998), we held that "[i]t is necessary for the individual to be tried by another judge in cases of constructive contempt where the trial judge has substantial personal involvement in the prosecution." In Terry, the judge himself brought the contempt charges against the individuals involved and therefore had a prosecutorial role in the proceedings. In both Williamson and Miller's cases, Judge Hines had substantial personal involvement in the prosecution because he was a material witness to what had occurred. In order to have a full hearing on the charges, Judge Hines would need to testify as a fact witness as to what he told his law clerk to tell to Williamson. The law clerk's testimony would be inadmissible hearsay because the declarant, Judge Hines, would be available to testify.
¶ 34. We therefore find that Judge Hines should have recused himself and remand for a new hearing on the motion for contempt.

CONCLUSION
¶ 35. The denial of the motion for admission pro hac vice is affirmed. Miller's actions support a finding that he engaged in the unauthorized practice of law. Miller procured clients in this state, investigated their claims, consulted with local counsel, and allowed his name to be placed on the pleadings in those cases. All of these combined actions go beyond merely referring clients to other counsel or merely serving in an advisory capacity.
¶ 36. The circuit court's judgments of contempt against Williamson and Miller are reversed because Williamson's right to due process was violated and because the circuit judge should have recused himself. We remand for proceedings consistent with this opinion.
¶ 37. Upon the issuance of our mandate in these cases, the Clerk of this Court shall promptly mail a copy of this opinion to The Mississippi Bar, Post Office Box 2168, Jackson, Mississippi XXXXX-XXXX, and note such mailing on the docket.
¶ 38. AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
PITTMAN, C.J., SMITH, P.J., COBB AND CARLSON, JJ., CONCUR. EASLEY AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, J.
McRAE, P.J., Dissenting:
¶ 39. The Court's holding today illustrates an antiquated approach to a modern *239 day question of law concerning what is, ultimately, the right of a citizen to choose legal representation. The holding, inter alia, limits the participation of an attorney, or an expert, or even a paralegal, in a proceeding or trial. Further, anyone with a monetary interest in a particular case or lawsuit is potentially engaging in the practice of law. And if the senior partner of a regional law firm or multi-national law firm, or an attorney in a limited joint venture, is named in the pleadings, or has a monetary interest in a Mississippi case, he or she, too, is in effect practicing law in Mississippi. This is an end that simply cannot be justified today; and in any case, the means chosen to reach it most certainly cannot be. Indeed, the attorneys in this case, Edward A. Williamson and Michael J. Miller, have been subjected to an ad hoc decision-making process, for which no legal foundation exists. Only by making new rules out of ambiguous rules is the majority able to achieve its desired policy preference in this case. Accordingly, I dissent.
¶ 40. The attorneys in this case have been subjected to rules that are not crystal clear, as the majority outlined in, but retracted from, its originally circulated opinion in this case. Specifically, following in the misguided footsteps of the trial court, the majority holds Miller to a standard that did not exist, and worse appears to hold him guilty of violating it.
¶ 41. Today the majority holds "that a foreign attorney will be deemed to have made an appearance in a Mississippi lawsuit if the foreign attorney signs the pleadings or allows his or her name to be listed on the pleadings." (emphasis added). This holding and the trial court's according ruling are the first of any court to this effect. Thus, Miller's actions prior to the ruling could not possibly constitute a violation, much less one sufficient to deny the pro hac vice motion.
¶ 42. This, however, is not the only reason that this holding is so peculiar and unjust. Indeed, its ramifications will, without any justification from this Court whatsoever, unravel years of well-settled and common practice, as well as the policies that underscore the rules of admission pro hac vice.
¶ 43. The goal of M.R.A.P. 46 is the protection of the Mississippi public from undereducated and unlearned individuals practicing law. This Court has accordingly stated that "the prohibition against others than members of the bar of the State of Mississippi from engaging in the practice of law is not for the protection of the lawyers against lay competition, but is for the protection of the public." Darby v. Miss. State Bd. of Bar Admissions, 185 So.2d 684, 687 (Miss.1966) (Citing Beach Abstract & Guar. Co. v. Bar Ass'n of Ark., 230 Ark. 494, 326 S.W.2d 900 (1959); State Bar of Ariz. v. Ariz. Land Title & Trust Co., 90 Ariz. 76, 366 P.2d 1 (1961); Grievance Comm. of Bar of New Haven County v. Payne, 128 Conn. 325, 22 A.2d 623 (1941); Union City & Obion County Bar Ass'n v. Waddell, 30 Tenn.App. 263, 205 S.W.2d 573 (1947); Hexter Title & Abstract Co. v. Grievance Comm., State Bar of Tex., 142 Tex. 506, 179 S.W.2d 946 (1944)). "The state has legitimate interests to be weighed in considering pro hac vice admissions in order to maintain a high level of professional ethics, [and] to assure a high quality of representation in the courts." McKenzie v. Burris, 255 Ark. 330, 500 S.W.2d 357, 364 (1973) The majority's opinion is inconsistent with this goal.
¶ 44. What is consistent with this goal, however, is the practice of Mississippi lawyers who, like Williamson, seek the assistance of expert, or highly qualified, attorneys who are not licensed in this state and therefore, enter into a limited joint venture. Such attorneys are often needed to *240 effectuate full and comprehensive legal advice and services for our Mississippi residents. Often, foreign expert attorneys teach our local attorneys how to most effectively and zealously represent Mississippi clients, which is the reason why Rule 46 exists in the first place. Further, it is the client who decides who can provide the very best advocacy possible. The client has the ultimate right to choose their selected counsel.
¶ 45. Even the Mississippi Rules of Professional Conduct encourage the association of specialized attorneys in order to achieve competency. The Comment to Mississippi Rule of Professional Conduct 1.1 advises that an attorney may become competent to handle a matter by the association or consultation of "a lawyer of established competence in the field in question." M.R.P.C. 1.1 cmt. For some Mississippi lawyers, it may be necessary to seek the assistance and counsel of a foreign attorney in a specialized field. The majority's opinion effectively makes any such consultation the unauthorized practice of law, which could place both the local and foreign attorney on the chopping block of contempt.
¶ 46. Most surprisingly in this matter, however, is the majority's rather enormous and untutored leap in announcing that an appended name on a pleading constitutes an "appearance" for the purpose of determining whether one is "practicing law" in Mississippi. This does and will include the name or names that appear as part of any firm's name on any pleading. What does this do to the regional and multi-national firms? There are many regional firms in which the firm's names include those of attorneys licensed in various states. These firms have offices here in Mississippi but not all those appearing in the firm's name are licensed here in Mississippi. Is the majority not also holding that these foreign attorneys are "appearing" in Mississippi courts and therefore possibly engaging in the unauthorized practice of law as prescribed by M.R.A.P. 46(b)(6).
¶ 47. Further, citing Darby, 185 So.2d at 687, the majority states that "the element of compensation may be a factor in determining whether the specified conduct constitutes the practice of law." Is it also the case, therefore, that since regional firms share profits throughout the firm, that the unlicensed attorneys therefor are practicing law in Mississippi by virtue of their financial interest in a Mississippi litigation? There are many, many foreign or out of state attorneys who have a financial interest in Mississippi litigations although they do not maintain Mississippi licenses.
¶ 48. Worth additional consideration is the connection of today's holding with our joinder rules. In American Bankers Ins. Co. of Florida v. Alexander, 818 So.2d 1073, 1076 (Miss.2001) this Court approved the joinder of over one thousand cases into a single cause of action under Rule 20 of the Mississippi Rules of Civil Procedure. The majority's definition of "appearance and occasions" suggests that these one thousand cases would be seen as separate and distinct appearances and occasions, thereby making a foreign attorney disqualified for admission pro hac vice every time there is a consolidation of more than five cases. This will have a significant impact on the legal climate in Mississippi since there is a steady increase in the number of consolidated causes. The larger consolidated causes which involve multinational corporations usually involve a team comprised of foreign attorneys having expertise in large lawsuits and a local attorney. The majority's holding will create ambiguity as to whether these expert foreign attorneys will be allowed to continue the customary path of pro majority vice admittance.
*241 ¶ 49. The majority also misses the glaring distinction between petitioning a court for admittance pro hac vice and actually being admitted pro hac vice. Miller has not been admitted pro majority vice on more than five occasions in this state in the last twelve months. In most cases in which he was involved, he had either petitioned for admission or maintained an interest therein. Albeit, the majority concludes that Miller "appeared" for the purpose of determining that he engaged in the "general practice of law" in "any court or administrative agency of this state on more than five (5) occasions in any 12 month period." M.R.A.P 46(b)(6)(ii). If the filing of a Motion for Appearance Pro Hac Vice is considered an "appearance or occasion," then it is possible for someone to file five Motions for Appearance, never be granted appearance and still be found to have "appeared" for the purposes of the rule and therefore be forbidden from admission pro hac vice on other cases.
¶ 50. Additionally, the twelve month period of time referenced in M.R.A.P. 46(b)(6)(ii) is modified by the word "any." When, therefore, does this "any twelve month period" begin and end so as to determine, if at all, that an out of state attorney has engaged in the general practice of law? Does it mean a chronological period, or five cases pending over a protracted period since they were not closed out in the chronological year. Is the twelve month period when one first has a case and the period continues through the next twelve months and drops off after that? What about insurance lawyers or in house counsel for national corporations that supervise local attorneys and control the lawsuit? Have they made an appearance and practiced in this state? Could it include six months two years ago, for example, and six months this year? Or is it clearly applicable to the most recent twelve month period? While I am inclined to believe it is the latter, the rule does not make this clear. In the present case, Miller's name appeared, or, he was admitted pro hac vice, or, he did not seek admission but had an interest, in seven cases in the preceding twelve month period. In any case, there was absolutely no twelve month period in which he appeared pro hac vice more than five times as the rule clearly forbids.
¶ 51. And as a practical matter, even without attempting to define an "occasion" for which an out-of-state attorney must petition for pro hac vice admission, it is undebatable that the filing of a complaint initiates a law suit, and thus the "occasion" for which pro hac vice admission is sought. Indeed, this filing at least sets the "occasion" in motion. Since, however, the majority holds that the placement of a name, not a signature, but a name, on a pleading constitutes an "appearance," an attorney seeking admission pro hac vice must petition for admission before filing an initial complaint so as to avoid making an illegal appearance before the court if, indeed, he wishes to enter the litigation at the outset. If, however, there is no complaint before the court, then there is no "occasion" for which to petition for admission. Requiring an attorney to file for admission pro hac vice before allowing him to present his name toward an "occasion" that does not yet exist is, quite literally, putting the cart before the horse.
¶ 52. Finally, the logic of holding one whose name appears on the pleadings without an according signature as having "appeared" before the court does not comport with the standard of certification required of the attorney whose signature does appear on the pleadings. It is the signing lawyer who attests to the merit of the allegations in the complaint. It is the signing attorney, who by virtue of signing the pleading, certifies that to "the best of *242 his knowledge, information, and belief, there is good ground to support" the allegations of the pleading or complaint. M.R.C.P 11. Are we now going to hold that a name on a pleading has the same meaning as the name whose signature appears on the pleading? This does not make sense.
¶ 53. Nor does it make sense that this Court affirms that Miller violated a court order because he "participated" in a deposition over which he had no control. This Court has stated that [a] contempt citation is proper when the contemnor has willfully and deliberately ignored the order of the court. Brame v. State, 755 So.2d 1090, 1093 (Miss.2000) (quoting Cooper v. Keyes, 510 So.2d 518, 519 (Miss.1987) citing Millis v. State, 106 Miss. 131, 63 So. 344 (1913)). Here, there was no clear order by the trial court specifying the role and limitations of Miller's attendance at the deposition. The law clerk told Miller the judge would allow him to attend the deposition but that he could not participate. Does keeping a record and writing down questions, the asking of which remain in the sole discretion of the lawyer conducting the deposition, constitute participation? Are we now saying paralegal assistants or a non designated expert cannot assist the attorney because making sure the attorney covers everything is "participating" in a deposition or trial? What is the difference? Williamson kept control of his deposition at all times. His discretion in examining the deponent remained with him, period, regardless of whether the notes and questions had fallen on the floor, or were passed to Williamson for purposes of suggestion.
¶ 54. Furthermore, the Court's affirmation of contempt begs the question of whether general counsel for a foreign corporation or insurance company, who is not licensed to practice law in Mississippi, may advise and assist local counsel in the defense of claims? Never mind, for example, that it is common practice for corporations and insurance companies to require local counsel to accept advice from their general counsel and get their approval on all settlements. And never mind that "a commercial entity that serves interstate and/or international markets is likely to receive more effective and efficient representation when its general counsel, who is based close to its home office or headquarters and is familiar with the details of its operations, supervises the work of local counsel in each of the various jurisdictions in which it does business." Fought & Co. v. Steel Eng'g & Erection, Inc., 87 Hawai'i 37, 951 P.2d 487, 497 (1998). If "practicing law" in Mississippi includes advising clients and advising local counsel, then these corporations and insurance companies will have to totally rely on the judgment and guidance of their associated local counsel.
¶ 55. Additionally, it is common practice of attorneys in Mississippi to hire jury consultants and other experts to help with trial preparation. Some experts even participate in depositions just by attending and taking notes in order to help counsel in establishing their case. Jury consultants also advise counsel on voir dire. Are these experts "practicing law" by participating, attending, and advising local counsel?
¶ 56. In the final analysis, it cannot be gainsaid, as other courts have recognized, that technology and society are moving and growing at such great speeds raising questions about where boundaries of law begin and end. "[T]he demands of business and the mobility of our society pose distinct problems in the regulation of the practice of law by the states." Birbrower, Montalbano, Condon & Frank v. Superior Court, 17 Cal.4th 119, 70 Cal.Rptr.2d 304, 949 P.2d 1, 7 (1998). Courts are beginning to recognize that the legal profession *243 should discourage regulation that unreasonably imposes territorial limitations upon the right of a lawyer to handle the legal affairs of his client or upon the opportunity of a client to obtain the services of a lawyer of his choice in all matters including the presentation of a contested matter in a tribunal before which the lawyer is not permanently admitted to practice. Id. See also Fought, 951 P.2d at 497. It is clear that often times it is necessary for foreign attorneys to become involved in Mississippi cases. These attorneys may be corporate counsel or specialized litigators. There participation is necessary to effectively assist parties in litigation.
¶ 57. Today, however, the Court foists a completely senselessa radicalregulation upon the legal profession, which will ultimately hurt none other than the citizens of this state who have a right to counsel of their choice. Further, the Mississippi Bar Counsel appears to have its work cut out in policing the multi-national and regional firms as well as in house counsel for the corporations and insurance companies doing business in this state.
DIAZ, J., JOINS THIS OPINION.
NOTES
[1] M.R.A.P. 46(b)(6) provides in relevant part as follows:

(6) Prohibition of Regular Practice of Law in Mississippi Under Pro Hac Vice Privilege.
(i) General Prohibition. No foreign attorney shall appear as counsel pro hac vice before the Supreme Court or the Court of Appeals or any court or administrative agency of this state if the foreign attorney maintains an office within this state, or if the foreign attorney has engaged in the general practice of law in this state without being properly admitted and licensed to practice law in this state.
(ii) General Practice Defined. Appearances as counsel pro hac vice before any court or administrative agency of this state on more than five (5) occasions in any 12 month period shall be deemed the general practice of law in this state, which may be lawfully performed only by an attorney properly admitted and in good standing as a member of the Mississippi Bar.
[2] M.R.A.P. 46(b)(9) provides that "Any pleadings or other papers filed in violation of this rule shall be stricken from the record upon the motion of any party or by the court or administrative agency sua sponte."
[3] M.R.A.P. 46(b) provides in pertinent part as follows:

(4) Informational Affidavit. A foreign attorney desiring to appear pro hac vice before any court or administrative agency of this state shall file with subject court or administrative agency a sworn affidavit. Such affidavit shall be filed not later than the first occasion on which the foreign attorney files any pleading or other paper in the case or appears personally before the court or administrative agency.... The sworn affidavit shall contain the following information:
i. the name of the court or administrative agency before which the foreign attorney desires to appear as counsel pro hac vice;
ii. the style of the matter in which the foreign attorney desires to appear;
iii. the full name, residence address, and office address of the foreign attorney;
iv. each jurisdiction in which the foreign attorney has been admitted and the date of admission;
v. a statement that the foreign attorney is currently licensed in good standing to practice law in each jurisdiction in which the foreign attorney has been admitted or, if the foreign attorney is not currently licensed in good standing to practice law in any jurisdiction in which the foreign attorney has previously been admitted, a full explanation of circumstances;
vi. a statement that the foreign attorney is not currently suspended or disbarred by any jurisdiction in which the foreign attorney has been admitted;
vii. a statement of whether or not the foreign attorney has been the subject of disciplinary action by the bar or courts of any jurisdiction during the preceding five (5) years, and if so, a full explanation of circumstances;
viii. the style of each cause, including the name of the court or administrative agency, in which the foreign attorney has appeared pro hac vice within this state within the immediately preceding 12 months;
* * *
(6) Prohibition of Regular Practice of Law in Mississippi Under Pro Hac Vice Privilege.
i. General Prohibition. No foreign attorney shall appear as counsel pro hac vice before the Supreme Court or the Court of Appeals or any court or administrative agency of this state if the foreign attorney maintains an office within this state, or if the foreign attorney has engaged in the general practice of law in this state without being properly admitted and licensed to practice law in this state.
ii. General Practice Defined. Appearances as counsel pro hac vice before any court or administrative agency of this state on more than five (5) occasions in any 12 month period shall be deemed the general practice of law in this state, which may be lawfully performed only by an attorney properly admitted and in good standing as a member of the Mississippi Bar.
* * *
[4] Miller had flown down from Virginia the night before on the assumption that the motion for admission pro hac vice would be granted.
[5] Actually, two judgments of contempt were entered. The first one, which was entered on November 29, 2000, barred Miller from the practice of law in the Fourth Circuit Judicial District. However, this judgment was rescinded and a second one entered on December 8, 2000. The circuit court did not bar Miller from practicing law in the Fourth District in the second judgment.
[6] Upon request by the Court pursuant to M.R.C.P. 29, briefs were submitted by the Mississippi Trial Lawyers Association, the Magnolia Bar Association, The Mississippi Bar, and the Mississippi Prosecutors Association.
[7] Heirs and Wrongful Death Beneficiaries of Eddie Bryant, Jr. v. Nosratollah Ghaemmaghami, M.D., and RCG of Mississippi, Inc. d/b/a Kidney Care, Inc., No. 251-98-651-CIV, Hinds County Circuit Court.