MAXWELL, J.,
concurring in part and in the result:
¶ 95. Louis St. Martin may not have initially hustled Forbes’s personal-injury case. But in the end, through his own unscrupulous practices and zeal to hold on to the promising lawsuit, he possibly sharked himself out of a large contingency fee. Because of the large cash advances in play, I agree with the majority that a fact issue exists over whether the two contingency-fee contracts are void. Thus, I concur summary judgment was improper and that Forbes’s claims should be remanded to the Harrison County Chancery Court. However, I am somewhat hesitant to join the majority’s opinion in full — particularly its broad discussion of what constitutes the unauthorized practice of law. I also find Forbes’s legal-malpractice claim, though viable enough to survive summary judgment, is more narrow than the majority views it.

Unauthorized Practice of Law

¶ 96. Because there is no evidence that St. Martin engaged in the “general practice of law” in Mississippi, the more relevant inquiry into Forbes’s allegation that St. Martin engaged in the unauthorized practice of law in our state is whether St. Martin appeared in the underlying litigation without being admitted pro hac vice. See M.R.A.P. 46(b). The majority goes beyond this question and addresses other activities outside of Rule 46’s definition of “appearance” but within the broader category of the “practice of law.” My concern is that, in doing so, the majority casts its net a bit too wide, suggesting, for instance, that a foreign attorney must seek pro hac vice status to merely advise a client on Mississippi law or a Mississippi legal matter — even in circumstances when Rule 46 does not require or provide a procedural avenue for the lawyer to do so.
¶ 97. I recognize the supreme court in Darby and In re Williamson addressed the broader issue of what activities fall within the “practice of law.” But the court did so because of the specific circumstances in those cases, which are distinct from those here.
¶ 98. In Darby, a circuit clerk, who had no law license, had engaged in the unauthorized practice of law by drafting land deeds and other legal documents. Darby v. Miss. State Bd. of Bar Admissions, 185 So.2d 684, 686 (Miss.1966). Because Mississippi prohibits anyone without a law license from performing any activities that fall within the practice of law, the question in Darby was whether the circuit clerk had performed “any exercise of intelligent choice in advising another of his legal rights and duties,” thus “bring[ing] the activity within the practice of the legal profession.” Id. at 687.
¶ 99. In In re Williamson, a foreign attorney had appeared in so many Mississippi lawsuits in such a short period that he was no longer eligible for pro hac vice admission but instead had engaged in the “general practice of law,” as defined by Rule 46(b). In re Williamson, 838 So.2d 226, 231-2 (¶¶ 3-5), 234-37 (¶¶ 17-27) (Miss.2002). Since Rule 46 prohibits the “general practice of law” by a foreign attorney without obtaining a Mississippi license (and not merely pro hac vice admission), the question in that case was whether, by participating in yet another Mississippi lawsuit, the foreign attorney’s activities fell within the “practice of law.” In re Williamson, 838 So.2d at 235-37 (¶¶ 23-27).
¶ 100. But when a foreign attorney is not engaged in the prohibited “general practice of law,” Rule 46 is clear that a foreign attorney commits the unauthorized practice of law in Mississippi when he has made an “appearance” in a matter pending *1211 in Mississippi without first being admitted pro hac vice. M.R.A.P. 46(b). In In re Williamson, the supreme' court explained “what constitutes making an appearance”:
[A] foreign attorney will be deemed to have made an appearance in a Mississippi lawsuit if the foreign attorney signs the pleadings or allows his or her name to be listed on the pleadings. A foreign attorney may further make an appearance in a Mississippi court by physically appearing at a docket call, a trial, a hearing, any proceeding in open court, at a deposition, at an arbitration or mediation proceeding, or any other proceeding in which the attorney announces that he or she represents a party to the lawsuit or is introduced to the court as a representative of the party to the lawsuit. These actions require that the foreign attorney be admitted pro hac vice[.]
In re Williamson, 838 So.2d at 235 (¶ 22). With respect to the majority, “advisfing] Mississippi citizens of their legal rights, on claims that arose within and are to be litigated in the State of Mississippi,” does not itself fall within the category of “appearance” requiring pro hac vice admission. Majority Opinion, 55. If our sister states bought into this broad approach, how many Mississippi practitioners who merely advise out-of-state clients on issues involving a foreign state’s law, but do not appear in that foreign court, would find themselves in a jam? My guess is quite a few.
¶ 101. While there is no evidence St. Martin engaged in the “general practice of law” in Mississippi, I agree there is a genuine fact issue over whether St. Martin “appeared” in Mississippi by permitting his name to be listed on Forbes’s pleadings and physically appearing at depositions. See In re Williamson, 838 So.2d at 235(22); M.R.A.P. 46(b).
¶ 102. Because I also agree the failure to be admitted pro hac vice may affect the enforceability of the professional-services contract — as there is evidence St. Martin could not fulfill his end of the representation contract without making an appearance in Mississippi — I concur that summary judgment was improper on this issue.

Legal Malpractice

¶ 103. I also concur that Forbes’s malpractice claim survives summary judgment, but I write separately to point out the narrowness of this claim.
¶ 104. There are two distinct types of legal-malpractice claims. The first encompasses claims “based on negligence (sometimes called a breach of the standard of care).” Crist v. Loyacono, 65 So.3d 837, 842 (¶ 15) (Miss.2011). And the second type is “based on breach of fiduciary duty (sometimes called a breach of the standard of conduct).” Id. Forbes is bringing the second type of claim.
¶ 105. While the majority quotes the test from Wilboum, I find the more appropriate test for Forbes’s breach-of-fidueia-ry-duty claim is found in Crist:
When a legal-malpractice claim is based on an allegation of breach of fiduciary duty, the plaintiff must establish (1) the existence of an attorney-client relationship; (2) the acts constituting a violation of the attorney’s fiduciary duty; (3) that the breach proximately caused the injury; and (4) the fact and extent of the injury.
Crist, 65 So.3d at 842-43 (¶ 15). Thus, unlike negligence-based claims, Forbes need not “show that, but for his attorney’s negligence, he would have been successful in the prosecution or defense of the underlying action.” Id. at 842 (¶ 14) (citation omitted). But he does have to show proximate cause of an injury.
*1212 ¶ 106. To the extent Forbes argues his “injury” is being bound to the contract, I find he is merely reasserting his equitable claim that the contract is unenforceable— and not bringing an additional legal claim for malpractice. So I find the factual issues of whether Forbes ever signed the contingency-fee contract, whether St. Martin fraudulently or unduly influenced Forbes to sign the contract, and whether the contract contains unenforceable provisions tend to concern his equitable claim that the contract is unenforceable much more so than his malpractice claim.
¶ 107. As to his malpractice claim, it appears the only injury Forbes attempts to prove is that, because of St. Martin’s breach of fiduciary duties, he agreed to pay a contingency fee versus a smaller fee based on an hourly rate. Therefore, Forbes’s legal-malpractice claim only comes into play if, on remand, the chancellor finds the contingency-fee contract is otherwise in force.
ROBERTS, J., JOINS THIS OPINION IN PART.