COLEMAN, Justice,
dissenting:
¶ 45. Attorney Louis St. Martin was never licensed to practice law in Mississippi, and he never sought or received permission to appear pro hac vice in the litigation at issue. Nevertheless, he entered into a contract in 1998 with Lisa Forbes wherein he promised “to handle any and all claims that [the Forbeses] may have against Texaco.” Pursuant to the language of the contract, St. Martin was “to have exclusive handling of [the] claim.” The contract provided that St. Martin would practice law on behalf of the Forbeses in the State of Mississippi.
¶ 46. As he was not licensed in Mississippi and never achieved admission to practice pro hac vice, St. Louis’s promise was an illegal one. Miss.Code Ann. § 73-3-55 (Rev.2012); see also Darby v. Miss. State Bd. of Bar Admissions, 185 So.2d 684 (Miss.1966).
The objective of both the legislature and the courts in supervising admissions to the bar is the protection of the public against injuries from acts or services, professional in nature, constituting the practice of law, and done or performed by those not deemed to be qualified to perform them.... The welfare of the public is the principal consideration.
Darby, 185 So.2d at 687. The courts “have the duty and the power to declare void and unenforceable contracts made in violation of law or in contravention of the public policy of the state.” Smith v. Simon, 224 So.2d 565, 566 (Miss.1969). Because the contract was for services St. Martin could not legally provide and in contravention of established public policy, I would hold it to be void as a matter of law.
¶ 47. In his separate opinion, Justice Kitchens takes the position that, because St. Martin associated local counsel, nothing was wrong with the contract. With respect, I disagree, although I might agree if the contract allowed St. Martin to associate local counsel. St. Martin contracted to perform a service he could not legally perform precisely because the contract provided he would exclusively handle the claim. What he actually did or what the parties may have intended as to the hiring of local counsel is not relevant to the terms of the contract, which are unambiguous in the instant regard. Brothers v. Winstead, 129 So.3d 906, 913 (¶ 13) (Miss.2014) (“Our concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy.”). See also Ivison v. Ivison, 762 So.2d 329, 335 (¶ 17) (Miss.2000) (“When this Court interprets a contract, we look to the contract for its meaning, not what a party thereto may have thought it meant. The standard is objective, measured by the language of the contract, not by the subjective intent or belief *1142 of a party which conflicts with meaning ascertained by the objective standard.”) (citation omitted). St. Martin contracted to do that which he could not legally do— practice law in the State of Mississippi. Justice Kitchens’s position, that St. Martin could legally handle the claim pro hoc vice, errs in that, had St. Martin requested admission pro hac vice, he would have been required by Rule of Appellate Procedure 46(b)(4) to retain local counsel, which in turn would have violated the terms of the contract.
¶ 48. Justice Kitchens correctly points out that the contract defines the “attorney” who would represent the Forbeses as St. Martin’s firm, St. Martin, Mahoney & Associates, and not St. Martin himself. With respect, I nonetheless disagree with his conclusion that, as we do not know if any other members of St. Martin’s firm were licensed in Mississippi, we cannot say the contract was illegal. First, while certainly not conclusive, there is no evidence in the record that any other attorney in St. Martin, Mahoney & Associates was licensed in Mississippi. It was a small firm and the firm’s letterhead, which appears in the record, does not indicate any of the attorneys were licensed in Mississippi. Second, a person cannot have a lawyer-client relationship with a law firm; only with a lawyer may such a relationship exist. See Miss. Rules of Profl Conduct 1.2. At most, the fact that the contract defines the firm, rather than St. Martin, as the attorney creates an ambiguity regarding who the parties intended would represent the Forbeses, and any such ambiguity is easily cleared up upon an examination of the record, which contains, inter alia, the following: (1) a letter dated August 13, 1998, from St. Martin to local counsel detailing his findings made pursuant to investigating the facts underlying his clients’ claims, confirming that St. Martin would advance the Forbeses’ living expenses to them, and confirming all other expenses would be divided fifty-fifty; (2) a letter from local counsel to St. Martin, dated August 16, 1998, wherein local counsel requested that St. Martin review a proposed complaint, discussing litigation strategy, and requesting suggestions from St. Martin; (3) another letter from local counsel, dated August 17, 1998, to St. Martin acknowledging that St. Martin had authorized the filing of the complaint; and (4) a June 10, 1999, letter from St. Martin to local counsel to the effect that St. Martin had counseled the clients regarding a settlement offer, including the legal ramifications of the offer, and that the clients had rejected the offer. The June 10, 1999, letter bears the signatures of St. Martin and both clients. St. Martin testified via his own deposition that he attended depositions taken in the case. Given the foregoing facts of record, no other reasonable conclusion can be reached than the parties to the contract intended for St. Martin to represent the Forbeses.
¶ 49. Not only did the contract contain an illegal promise — the promise to practice law without a license — our laws against practicing law in Mississippi without a license undoubtedly were broken in the performance of the contract. In In re Williamson, we held that the following actions by an out-of-state attorney constituted the practice of law in Mississippi: the cases in question originated from the attorney’s office and were “his” cases, the cases came to his office via a toll-free phone number he advertised in Mississippi, he reviewed the cases to determine their merit, he provided expert witnesses, and he worked with local counsel to file a complaint. In re Williamson, 838 So.2d 226, 235-236 (¶¶ 23-24) (Miss.2002). The Court further wrote,
[The attorney in question] clearly conferred with clients, advised them as to *1143 their legal rights and then engaged the services of another attorney to litigate the claim. He procured each and every client through commercials on the television. Once their claims were investigated by Miller and his office staff, he contacted Williamson. Miller characterized these cases as “his” cases. He continued to advise Williamson on the case and, in the case sub judice, attended a deposition. Miller also had a financial interest in the outcome of these cases.
Id. at 286 (¶ 27). The Williamson Court explicitly held that such factors supported a finding of the unlicensed practice of law irrespective of whether the unlicensed attorney’s names appeared on the pleadings. Id. at 285 (¶ 23).
¶ 50. If the facts underlying the William,son Court’s conclusion constituted a sufficient basis for holding that an unlicensed attorney engaged in the practice of law in Mississippi, then certainly the facts in the case sub judice provide an even greater basis for such a finding. The conclusion that St. Martin did, in fact, practice Mississippi law without a license to do so delivers me to my final point of disagreement with the majority. The majority opinion appears to indicate that a foreign attorney, such as St. Martin, who avails himself of Mississippi’s courts and law to gather and handle cases, is not subject to Mississippi’s Rules of Professional Conduct. Certainly, in the instant case, he would have been. St. Martin undisputedly was an attorney licensed in Louisiana. Rule 5.5(a) of Louisiana’s Rules of Professional Conduct provides, “A lawyer shall not practice law in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.” So important has Rule 5.5 been deemed to be, that the Louisiana Supreme Court has disbarred attorneys for its violation. Dinet v. Gavagnie, 948 So.2d 1281, 1284 (¶ 9) (Miss.2007) (citing In re Stamps, 874 So.2d 113, 125 (La.2004)).
¶ 51. Although I would reach a different result than the majority strictly on the basis that the contract itself contains an illegal promise, I also disagree and believe that St. Martin engaged in the unlicensed practice of law and subjected himself to Mississippi’s Rules of Professional Conduct.
¶ 52. Accordingly, I respectfully dissent.
DICKINSON, P.J., AND CHANDLER, J., JOIN THIS OPINION.