# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-CA-00010-SCT

*MATTHEW D. WIGGINS, JR.*

*v.*

*THE CITY OF CLINTON MISSISSIPPI, A MUNICIPAL CORPORATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/17/2018 |
| TRIAL JUDGE: | HON. LARITA M. COOPER-STOKES |
| TRIAL COURT ATTORNEYS: | CHELSEA H. BRANNON |
| | MICHAEL V. CORY, JR. |
| | FRANCIS SPRINGER |
| | WALTER E. WOOD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY SPECIAL COURT OF EMINENT DOMAIN |
| ATTORNEYS FOR APPELLANT: | MICHAEL V. CORY, JR. |
| | FRANCIS SPRINGER |
| ATTORNEY FOR APPELLEE: | KELLY D. SIMPKINS |
| NATURE OF THE CASE: | CIVIL - EMINENT DOMAIN |
| DISPOSITION: | AFFIRMED - 05/07/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, C.J., ISHEE AND GRIFFIS, JJ.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1. Matthew Wiggins appealed a decision of a special court of eminent domain to the County Court of Hinds County, Mississippi, approving the City of Clinton's exercise of eminent domain. Wiggins bought property located at 110/112 West Leake Street, Clinton, Mississippi, in March of 2016. At the time, the structures located there were dilapidated and were in need of extensive structural repairs. Soon after Wiggins took possession of the

properties, Clinton found that the properties should be demolished due to neglect. Clinton assessed 1,434 separate code violations to property Wiggins owned. Wiggins pleaded guilty to the violations on January 26, 2017. Clinton then found additional violations against Wiggins at those properties and at other properties he owned in Clinton. Wiggins was found guilty of two violations by the County Court of Hinds County on March 12, 2018. The remaining violations were dismissed in November 2018.

¶2.    On June 19, 2018, Clinton adopted an urban-renewal plan under Mississippi Code Section 43-35-11 (Rev. 2015). This plan designated an urban-renewal area that corresponded with the Olde Towne Clinton Historic District. The parcel at 110/112 West Leake Street was within the renewal area. Clinton included the parcel in part because of its historic significance.[1] On August 15, 2018, Clinton filed its complaint in the special court of eminent domain against Wiggins. Clinton sought to take the parcel located at 110/112 West Leake Street. A codefendant was dismissed for having no legal interest in the process. The special court found Clinton's exercise of eminent domain proper.

**STANDARD OF REVIEW**

¶3.    A special court of eminent domain is subject to the same review as any other trial court in the state of Mississippi. *Morley v. Jackson Redevelopment Auth.*, 874 So. 2d 973, 975 (Miss. 2004) (citing *Miss. State Highway Comm'n v. Viverette*, 529 So. 2d 896, 900 (Miss. 1988); *State Highway Comm'n of Miss. v. Havard*, 508 So. 2d 1099, 1105 (Miss.

---

[1]In 1875, State Senator Charles Caldwell, an African-American Republican led a rally that evolved into the Clinton Riot of 1875. He was subsequently assassinated on that site.

1987)). We review determinations of the special court of eminent domain for abuse of discretion. *Id.* (citing *In re Williamson*, 838 So. 2d 226, 233 (Miss. 2002)).

¶4. If the court's factual findings are not supported by evidence and manifestly wrong, they will not be affirmed. *Id.* (citing *In re Williamson*, 838 So. 2d at 233) Reversal is likewise merited if the trial court relies on an incorrect statement of law. *Id.* (citing *In re Williamson*, 838 So. 2d at 233).

## ISSUES ON APPEAL

¶5. We considered three issues raised by Wiggins on appeal:

  1. The City lacked the legal authority to take the property.

  2. There was no public necessity for the taking.

  3. The City failed to prove a legal public use.[2]

## ANALYSIS

**I.     Whether the City of Clinton lacked legal authority to exercise eminent domain because its urban-renewal area was a sham.**

¶6. Wiggins's first asserts that Clinton lacked legal authority to take his property because its urban-renewal area did not strictly conform with the definitions of an urban-renewal area under Mississippi Code Section 43-35-3 (Rev. 2015). He argues that the lack of conformity renders the decision a sham formulated to allow Clinton to exert eminent domain. This argument does not challenge Clinton's right to exercise eminent domain but rather challenges the City's adoption of the urban-renewal area.

---

[2] Wiggins also raised another issue that we decline to address because it has no bearing on today's disposition.

¶7. Clinton argued in the trial court that Wiggins should have filed his objection under Mississippi Code Section 11-51-75, "within ten (10) days from the date" Clinton made its decision. Miss. Code Ann. § 11-51-75 (Rev. 2019). The resolution adopting the urban-renewal area was approved on June 19, 2018. Wiggins did not raise this issue until his response to Clinton's complaint on September 24, 2018. The trial court ruled the ten-day period for appealing the decision had expired. We, as the trial court did, find that Wiggins's objection was untimely.

## II. Did Clinton fail to demonstrate a public necessity to justify its exercise of eminent domain?

¶8. Whether a taking is necessary is within the power of the legislative branch to determine and, absent a showing of abuse of discretion or fraud, the judiciary will not interfere with this determination. *St. Andrew's Episcopal Day School v. Miss. Transp. Comm'n*, 806 So. 2d 1105, 1111 (Miss. 2002) (quoting *Jackson Redevelopment Auth. v. King, Inc.*, 364 So. 2d 1104, 1110 (Miss. 1978)); *Paulk v. Housing Auth. of Tupelo*, 195 So. 2d 488, 491 (Miss. 1967). Wiggins argues that since Clinton did not exhaust all other options before resorting to eminent domain, it failed to properly determine necessity. He argues that, among other avenues ostensibly available to Clinton, Clinton could have renovated the property and then assessed a corresponding lien on his property.

¶9. Wiggins's argument that the availability of other options demonstrates a lack of necessity fails to consider our jurisprudence. He presented no evidence indicative of fraud or abuse of discretion. Because the record provides no evidence of abuse of discretion or

4

fraud on the part of Clinton in determining necessity, we find the special court of eminent domain did not abuse its discretion by affirming Clinton's actions.

### III.   Did Clinton fail to demonstrate a public use to justify its exercise of eminent domain?

¶10.   In an eminent-domain proceeding, "the question whether the contemplated use be public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public." Miss. Const. art. 3, § 17. Here, the averred public use was urban renewal. Our jurisprudence dictates that urban renewal is a permissible public use for eminent-domain purposes. *Paulk*, 195 So. 2d at 490. Wiggins does not contend that urban renewal is not a permissible public use, only that Clinton's proof was unsatisfactory for a judicial determination of public use. Rather than offering new argument, he retreats to arguments related to Clinton's designation of the urban-renewal area.

¶11.   Clinton had a burden of demonstrating that the public use it determined satisfied the laws of our state. *Morley*, 632 So. 2d at 1289 (citing *Pearl River Valley Water Supply Dist. v. Brown*, 248 Miss. 4, 156 So. 2d 572, 576 (1963)). Before the special court of eminent domain, Clinton submitted testimony detailing what it planned to do with the property.[3] Wiggins responds that Clinton failed to comply with the urban-renewal statute in designating the urban-renewal district.

---

[3] The City planned to (1) sell the property to a private party who would renovate it, (2) utilize it as a commercial property, (3) preserve the rapidly deteriorating historical character of the properties, and (4) contribute to the revitalization of the Olde Towne Clinton Historic district.

¶12.    Wiggins separately offers that Clinton's specific plan for the property falls outside the ambit of urban renewal as a public use. This argument was explicitly rejected by this Court in *Paulk*, in which, after extensive review of precedent, federal cases, and cases from sister jurisdictions, the *Paulk* court held that utilizing private enterprise to further the goal of urban renewal and redevelopment is a permissible public use. *Paulk*, 195 So. 2d at 490–91 (discussing *Berman v. Parker*, 348 U.S. 26, 75 S. Ct. 98, 99 L. Ed. 27 (1954)).[4]

## CONCLUSION

¶13.    Sufficient evidence supported the judgment of the special court of eminent domain of a public use. Similarly, the record offers no evidence to demonstrate that the determination of the special court of eminent domain was manifestly wrong. Accordingly, we affirm its decision.

¶14.    **AFFIRMED.**

**KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**

---

[4] "There a unanimous court held that Congress may provide for redevelopment of blighted areas through its exercise of eminent domain powers, and it may determine that private enterprise can be used to obtain the object of redevelopment." *Paulk*, 195 So. 2d at 490 (citing *Berman*, 348 U.S. 26).