NO. 07-07-0101-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

DECEMBER 31, 2008

_____


IN THE MATTER OF THE GUARDIANSHIP OF LOYCE
JUANITA PARKER, AN INCAPACITATED PERSON

_____

FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;

NO. 24,438; HON. DAN MIKE BIRD, PRESIDING

_____

Before CAMPBELL, HANCOCK and PIRTLE, JJ.

**OPINION**


Loyce Juanita Parker appeals the trial court's appointment of her daughter Linda Jones as the permanent guardian of her person and estate. On appeal, Parker challenges the trial court's exercise of personal jurisdiction, its finding that she was an incapacitated person, its appointment of a guardian with full rather than limited authority, its appointment of Jones as her guardian, and its creation of a guardianship of her estate. We will affirm the judgment.

Background

Parker was born March 2, 1919, and with little interruption lived in Oklahoma until 2006. She and her husband of 68 years, Alvin Edward Parker, Sr., made their home on a farm near Waurika, Oklahoma. They were parents of five children. Four remained alive at the time of the guardianship hearing: Linda Jones, Polly Ward, Debra Boring, and Alvin Edward Parker, Jr. (Edward Parker). Jones and Boring live in Vernon, Texas, while Edward Parker and Ward live in Oklahoma. Other relatives live in Oklahoma and Vernon.

Parker's husband died unexpectedly in May 2006. By then, Parker no longer cooked and the family farmhouse was, according to Ward, "not livable." After her husband's funeral, Parker briefly stayed with Ward and with Parker's grandson in Oklahoma. On June 11, Parker went to Jones's home in Vernon. On June 23, Parker moved to the Alterra Sterling House, an assisted living center in Vernon. Edward Parker is trustee of a trust created by Parker and her husband providing for management of their assets. Jones testified that, as trustee, Edward Parker approved payment for his mother's care at Alterra. Boring spent two days decorating Parker's room and helped her mother send e-mails notifying the family of Parker's new address. One of the messages reported Parker was forgetful and "a little lonely."

Later that summer Parker was hospitalized for about ten days in Oklahoma City. While hospitalized, she was evaluated by a psychiatrist identified at trial only as "Dr. Dash." Dr. Dash did not appear live or by deposition at trial, but according to the testimony of Jones and Ward, it was the opinion of Dr. Dash that Parker had dementia or "mild

2

dementia," could not cook or drive, needed assistance with medication, required 24-hour care, and needed a guardian. Ward suggested Jones pursue a guardianship of their mother.

During November, Wichita Falls psychiatrist Brian Wieck, M.D., examined Parker. In a letter addressed to the Wilbarger County judge, Dr. Wieck opined that Parker was "incapacitated." The letter did not define the term. Dr. Wieck further opined that Parker suffered dementia and had "significant cognitive deficits including poor memory, disorientation, and confusion." He noted Parker experienced time disorientation, was not familiar with her medications, could not describe her financial situation, and was unable to recall recent meals. In his estimation, Parker's dementia was progressive.

Jones made application for appointment as permanent guardian of the person and estate of Parker in a pleading filed December 1, 2006. Attached was the letter of Dr. Wieck. The county court appointed an attorney ad litem for Parker and he answered on her behalf by general denial.

On December 16, without prior notice to Jones, Edward Parker along with Jones's nephew and a friend of the family removed Parker from Alterra and placed her at Heartland Plaza, an assisted living facility in Duncan, Oklahoma. Edward Parker filed a contest of Jones's guardianship application and the case was transferred to district court. Edward Parker also initiated Oklahoma proceedings for a guardianship of Parker. Following a January 8, 2007, hearing the Texas court appointed Jones temporary guardian of her mother. At the hearing, Ward testified of the need for a temporary guardian. The court

3

ordered Edward Parker to immediately return his mother to Texas but his counsel notified the court that Parker would not voluntarily return to Texas.

Although Parker's attorney ad litem remained in place, attorney Matthew Malone appeared on her behalf by notice filed February 2. Malone subsequently filed a motion for continuance, a motion to dismiss Jones's application, and an amended answer, and prosecuted a contest of the guardianship and appointment of Jones. On February 8, Edward Parker non-suited his contest of the proceeding. In a pleading filed on March 6, the day of trial, Ward and Boring contested the application for a permanent guardianship and alternatively sought appointment as guardian of their mother's person and estate.

On March 6, the court heard the pending applications and contests. Parker did not appear for the hearing but the court found her personal appearance unnecessary. Following the close of evidence, the court rendered judgment appointing Jones guardian of the person and estate of Parker, with full guardianship authority. By notice filed by Malone, Parker appealed.

Discussion

In her first issue, Parker contends she was not subject to the personal jurisdiction of the trial court.

4

Parker initially appeared by general denial and did not make a special appearance challenging the trial court's exercise of personal jurisdiction.[1] Following Malone's entry on her behalf she filed a motion for continuance and motion in limine to dismiss Jones's application. Neither were made subject to a challenge of the trial court's exercise of personal jurisdiction. On February 28, over fifty days after Jones's appointment as Parker's temporary guardian, Parker filed an unsworn amended answer which *inter alia* alleged the trial court lacked personal jurisdiction because she was not a Texas resident.

The existence or not of personal jurisdiction is a question of law. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex. 2002). Rule 120a allows a party to challenge a court's exercise of personal jurisdiction by making a special appearance through a sworn motion filed prior to a motion to transfer venue or any other plea, pleading, or motion. Tex. R. Civ. P. 120a(1). The rule is a limited exception to the general rule that a party subjects itself to a Texas court's jurisdiction by making an appearance for any purpose. *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 201 (Tex. 1985). A party may waive, however, any objection it might otherwise have to a court's exercise of personal jurisdiction over it. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 n.14, 105 S.Ct. 2174, 2182 n.14, 85 L.Ed.2d 528 (1985); *Shapolsky v. Brewton,* 56 S.W.3d 120, 140 (Tex.App.–Houston [14th Dist.] 2001, pet. denied), *disapproved on other grounds by Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 788-89 (Tex. 2005). Thus,

---

[1] The record supplies no reasonable basis supporting a special appearance. By the time Jones filed her application, Parker had resided at Alterra almost six months, Boring had notified extended family that Parker's address was a specific apartment at Alterra, the application alleged Alterra was Parker's residence, and Parker was served with process at Alterra.

a party waives the right to contest personal jurisdiction over it when it makes a general appearance before the court. Any answer or other appearance before judgment is a general appearance unless the party made a "special appearance" for the purpose of challenging the trial court's jurisdiction. Tex. R. Civ. P. 120a; *Shapolsky,* 56 S.W.3d at 140. Parker made a general appearance through her original answer, and through her later motion to dismiss Jones's application.

Additionally, it is undisputed that Parker was served with citation in Wilbarger County. The gist of Parker's jurisdictional complaint is answered by the case law holding that "[a]n assertion of personal jurisdiction based on physical presence alone constitutes due process." *Stallworth v. Stallworth,* 201 S.W.3d 338, 344 (Tex.App.–Dallas 2006, no pet.) (*citing Burnham v. Super. Court,* 495 U.S. 604, 619, 110 S.Ct. 2105, 2115, 109 L.Ed.2d 631 (1990) (plurality op.) ("jurisdiction based on physical presence alone constitutes due process because it is one of the continuing traditions of our legal system that define the due process standard of 'traditional notions of fair play and substantial justice.'")); *In re Gonzalez,* 993 S.W.2d 147, 151-54 (Tex.App.–San Antonio 1999, pet. denied); *Flores v. Melo-Paladins,* 921 S.W.2d 399, 402-403 (Tex.App.–Corpus Christi 1996, writ denied). Therefore, even assuming *arguendo* that for the purpose of the trial court's exercise of personal jurisdiction Parker was not a Texas resident on December 1, 2006, personal jurisdiction in the trial court was not improper as Parker was served with process in Wilbarger County.

Parker cites *Redmon v. Leach*, 130 S.W.2d 873 (Tex.Civ.App.–Dallas 1939, writ dism'd judgm't cor.) in support of her contention the Texas court had no jurisdiction to appoint a guardian for her. But *Redmon* is inapposite. There, the prospective ward was a domiciliary of Oklahoma and was not served with citation in the Texas proceeding to establish guardianship. *Id.* at 874.

We find personal jurisdiction over Parker properly attached. We overrule Parker's first issue.

In her second issue and allied sub-issues, Parker argues the trial court erred by admitting Dr. Wieck's letter as evidence because it was not authenticated and was hearsay, and because Wieck was not a qualified expert and Parker did not consent to disclosure of communication protected by the mental health professional-patient privilege of Rule of Evidence 510(b). Tex. R. Evid. 510(b).

We review challenges to the admission or exclusion of evidence, under an abuse of discretion standard. *Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527-28 (Tex. 2000). Conducting such a review, we examine the entire record to determine if the trial court acted arbitrarily and unreasonably. *Morrow v. H.E.B., Inc.,* 714 S.W.2d 297, 298 (Tex. 1986). A trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision. *In re Barber,* 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding). As fact finder, it was for the trial court to believe or disbelieve the evidence and resolve questions of credibility. *Aldine Indep. Sch. Dist. v. Ogg,* 122 S.W.3d 257, 267 (Tex.App.–Houston [1st Dist.] 2003, no pet.).

7

With exceptions not applicable here, no guardianship of an incapacitated person may be created unless a physician's letter or certificate meeting the requirements of Probate Code section 687(a) is presented to the trial court. Tex. Prob. Code Ann. § 687(a) (Vernon 2003). Section 687(a), as it existed at the time Jones filed her application, required a physician's letter or certificate:

> (1) describe the nature and degree of incapacity, including the medical history if reasonably available;
>
> (2) provide a medical prognosis specifying the estimated severity of the incapacity;
>
> (3) state how or in what manner the proposed ward's ability to make or communicate responsible decisions concerning himself or herself is affected by the person's physical or mental health;
>
> (4) state whether any current medication affects the demeanor of the proposed ward or the proposed ward's ability to participate fully in a court proceeding;
>
> (5) describe the precise physical and mental conditions underlying a diagnosis of senility, if applicable;
>
> (6) include any other information required by the court.

Tex. Prob. Code Ann. § 687(a) (Vernon 2003).

The Wieck letter as an attachment to Jones's application was filed on December 1, 2006. But at trial, over objection, the court took judicial notice of the letter and also admitted it into evidence. Parker's complaint is not that the Wieck letter fails to conform with section 687(a); rather, she argues the letter was not admissible as evidence in a contested guardianship hearing.[2]

---

[2] In argument to the trial court, counsel for Parker contended that attaching a physician's letter to an application so it becomes part of the record is acceptable. But, if contested, he argued, the letter should meet admissibility requirements of evidence.

Section 687(a) requires the applicant for a guardianship present a physician's letter or certificate to the court. By requiring presentation to the court, the legislature intended the court to consider the contents of the letter or certificate. To say the statute forbids judicial consideration because of evidentiary constraints would be illogical and render the statute nugatory. We are not free to adopt a construction that renders a statute meaningless or leads to absurd results. *See Watts v. City of Houston,* 126 S.W.3d 97, 100 (Tex. App.–Houston [1st Dist.] 2003, no pet.). While section 687 does not address the use of a physician's letter as evidence in a contested hearing, section 628 specifies "[t]he record books or individual case files . . . shall be evidence in any court of this state." Tex. Prob. Code Ann. § 628 (Vernon 2003). Here, trial was to the court and even if not admitted as trial evidence the court was compelled to consider the Wieck letter before granting or denying Jones's application for guardianship.[3] Assuming, but without deciding, that the court erred in admitting the Wieck letter as evidence in a contested hearing, the error was harmless as the court was bound to consider the letter.[4] We overrule Parker's second issue and allied sub-issues.

Through her third issue, Parker challenges the legal and factual sufficiency of the evidence supporting the trial court's finding of incapacity. Probate Code section 684 lists

---

[3] We note in their applications for guardianship of Parker, Edward Parker, Ward, and Boring incorporated the Wieck letter by reference, in apparent recognition of their obligation under section 687(a) to present a physician's letter or certificate to the court.

[4] We also note much of the information contained in the Wieck letter was admitted, without appellate challenge, through the testimonial recount of Dr. Dash's opinions and the observation of Parker's behavior by witnesses testifying for and against Jones's appointment as Parker's guardian.

the elements necessary for creating a guardianship. Tex. Prob. Code Ann. § 684(a), (b), (c) (Vernon 2003). An applicant must prove by clear and convincing evidence, *inter alia*, that the proposed ward is "an incapacitated person." *Id.* at (a)(1). An incapacitated person includes "an adult individual who, because of a physical or mental condition, is substantially unable to provide food, clothing, or shelter for himself or herself, to care for the individual's own physical health, or to manage the individual's own financial affairs . . . ." Tex. Prob. Code Ann. § 601(14)(B) (Vernon 2003). Incapacity of a prospective adult ward must be evidenced by "reoccurring acts or occurrences within the preceding six-month period and not by isolated instances of negligence or bad judgment." Tex. Prob. Code Ann. § 684 (c) (Vernon 2003).

In reviewing the legal sufficiency of the evidence under a clear and convincing standard, we look at all the evidence, in the light most favorable to the judgment, to determine if the trier of fact could reasonably have formed a firm belief or conviction that its finding was true. *In re J.F.C.,* 96 S.W.3d 256, 265-66 (Tex. 2002). We presume that the trier of fact resolved disputed facts in favor of its findings if a reasonable trier of fact could do so. *Id.* We disregard any contrary evidence if a reasonable trier of fact could do so, but we do not disregard undisputed facts. *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005).

In conducting a factual sufficiency review under the clear and convincing standard, we must consider all the evidence the fact finder could reasonably have found to be clear and convincing, determining whether, on the entire record, the fact finder could reasonably have formed a firm belief or conviction of the truth of the allegations. *See In re J.F.C.,* 96

10

S.W.3d at 266; *In re C.H.,* 89 S.W.3d 17, 25, 27-29 (Tex. 2002). In so doing, we consider whether disputed evidence is such that a reasonable fact finder could have resolved it in favor of its finding. If, in light of the entire record, disputed evidence that a reasonable fact finder could not have resolved in favor of the finding is so significant as to prevent a fact finder reasonably from forming a firm belief or conviction of the truth of the finding, then the evidence is factually insufficient. *See In re J.F.C.,* 96 S.W.3d at 266; *In re S.M.L.D.,* 150 S.W.3d 754, 757 (Tex.App.–Amarillo 2004, no pet.).

At trial, the parties sharply disagreed on Jones's claim of Parker's incapacity. In her case in chief, Jones presented evidence of the opinions of Dr. Wieck and Dr. Dash as well as testimony pointing to a memory loss by Parker, that she could not drive, needed 24-hour supervision, and required help with food, meals, and medication.

In opposition to Jones's guardianship, Helen Parker[5] testified Parker was happy in Oklahoma, alert, could bathe herself, and was not incapacitated. Kevin Bilbrey, Parker's grandson, expressed a belief that Parker could care for herself and had capacity to execute a medical power of attorney. Rick Cullar, a grandson of Parker, opined that Parker did not lack total capacity to care for herself and was capable of executing a medical power of attorney. Vicki Lovett, administrator of Heartland, agreed that Parker possessed the "cognitive ability" to create a medical power of attorney. Jerry Wallace, a long-time Parker family friend, assisted Edward Parker in moving his mother from Alterra to Heartland in December 2006. According to Wallace, Parker could carry on a conversation and play

---

[5] Helen Parker is Loyce Parker's sister. Helen's husband was not related to Loyce's husband despite the same surname.

11

dominoes. He believed she did not totally lack capacity to care for herself and did not need a guardian. Another relative, Shirley Parker, believed Parker did not lack total capacity to care for herself. Ward also opined that her mother was not totally incapacitated.

But even those opposing Jones's appointment and their witnesses recognized Parker's limitations. Bilbrey, when questioned by the trial court, testified he would not "recommend" Parker attempt providing her own food, clothing, or shelter. When asked on cross-examination if Parker could feed, clothe, and house herself without assistance Lovett responded, "No." She also "imagine[d]" Parker would need help managing her financial affairs. Wallace stated Parker could not live in a rent house without assistance. Shirley Parker acknowledged Parker needed help with her medications and cooking. Parker presented excerpts of her January 31, 2007, deposition. This testimony revealed confusion over the duration of her stay in Vernon. Parker's attorney ad litem testified he did not believe Parker could make a rational decision concerning the grounds on which a guardianship is based. He further testified, "I believe she has a short term memory loss, and you can get one answer now and a different answer 15 minutes later or a day later . . . ."

Viewing all the evidence in the light most favorable to the trial court's finding of incapacity, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that Parker was an incapacitated person. We find the evidence was, therefore, legally sufficient to support the trial court's finding of incapacity. Additionally, giving due consideration to the evidence that the trial court could reasonably have found to be clear

and convincing, we find the evidence was factually sufficient to support the trial court's finding of incapacity. Accordingly, we overrule Parker's third issue.

In her fourth issue, Parker argues the trial court abused its discretion by appointing a guardian with full rather than limited authority. For this claim, she directs us to Probate Code section 602 which she argues requires appointment of a "partial guardian if that less restrictive alternative will protect the ward."

Section 602 specifies the policy and purpose of guardianship:

> A court may appoint a guardian with full authority over an incapacitated person or may grant a guardian limited authority over an incapacitated person as indicated by the incapacitated person's actual mental or physical limitations and only as necessary to promote and protect the well-being of the person. If the person is not a minor, the court may not use age as the sole factor in determining whether to appoint a guardian for the person. In creating a guardianship that gives a guardian limited power or authority over an incapacitated person, the court shall design the guardianship to encourage the development or maintenance of maximum self-reliance and independence in the incapacitated person.

Tex. Prob. Code Ann. § 602 (Vernon 2003).

Section 602 does not provide a bright-line standard for the trial court's determination whether to vest a guardian with full or limited authority. Rather it expresses the policy of Chapter XIII of the Probate Code, which, in the words of one commentator, is "to serve the best interests of the disabled ward, both physically and financially." Christopher J. Pettit, *Journey Through Protective Services for Texas Elderly,* 33 St. Mary's L.J. 57, 64 (2001). To serve the ward's best interest, Chapter XIII creates procedures for courts exercising jurisdiction in guardianship matters. *Id.* These procedures "balance the needs of the

13

disabled ward and the desires of the proposed guardian to protect the ward from himself or herself as well as from third party influence." *Id.* The proper judicial application of these procedures requires the exercise of the court's sound discretion. *See Eddins v. Estate of Sievers,* 789 S.W.2d 706, 707 (Tex.App.–Austin 1990, no writ) (a court's determination of the proper type of guardianship is left to the exercise of its broad discretion and its decision will not be disturbed absent a clear abuse of discretion). We have noted above the facts supporting our conclusion that the evidence was legally and factually sufficient to support the trial court's finding of incapacity. Those facts also support our conclusion here that the trial court did not abuse its discretion by appointing a full rather than limited guardianship of Parker. We overrule Parker's fourth issue.

In her fifth issue and allied sub-issues, Parker argues the trial court abused its discretion by appointing Jones her guardian because (a) Jones sought control of Parker's trust making their interests adverse; (b) Parker did not want Jones as her guardian; and (c) other relatives were willing to serve as Parker's guardian.

Probate Code section 642(b)(1) prohibits a person with an interest adverse to the proposed ward or incompetent person from filing an application to create a guardianship of the proposed ward or incapacitated person. Tex. Prob. Code Ann. § 642(b)(1) (Vernon 2003). Parker claims Jones has an interest adverse to hers because she seeks control of Parker's trust. As the evidentiary basis for the claim Parker relies on the testimony of Jones's son Rick Cullar that he "assume[d]" his mother was concerned about her inheritance because she told him Edward Parker made loans from the trust to others and she was unsure if a $100,000 loan was repaid.

14

Based on evidence of this weight, the court did not abuse its discretion by denying Parker's motion in limine to disqualify Jones. *See* Tex. Prob. Code Ann. § 642(c) (Vernon 2003).

Probate Code section 679 authorizes a person who is not incapacitated to designate, as well as disqualify, potential guardians. Tex. Prob. Code Ann. § 679(a)(b) (Vernon 2003). Section 681 forbids appointment of a person disqualified in a section 679 designation. Tex. Prob. Code Ann. § 681(9) (Vernon 2003). On the day of trial, a self-proving declaration creating a hierarchy of potential guardians for Parker was filed. The declaration expressly disqualified Jones from serving as Parker's guardian. It is not disputed that Parker signed the declaration the day before trial began.

The trial court determined Parker's designation was ineffective because she was incapacitated the day before trial. During the presentation of evidence the court heard testimony on the issue whether Parker was incapacitated. Parker was not present for trial so as fact finder the perception of the court of her condition was based exclusively on its evaluation of the evidence which included brief excerpts of her deposition testimony. Witnesses opposed to Jones as guardian testified that Parker wanted her son Edward or one of the other family members appointed guardian. Jones testified that on December 1, 2006, the day she filed her application, Parker told her she could think of no better person to serve as her guardian than Jones. The neutral testimony of Parker's attorney ad litem sheds light on the reason for this apparent disparity. According to the attorney ad litem, "you can get one answer now and a different answer 15 minutes later or a day

later . . . ." We find the trial court did not abuse its discretion in disregarding Parker's designation.

Finally, at the eleventh hour Ward and Boring contested their sister's application and alternatively sought appointment as guardian of Parker. But as the trial court noted, Jones came forward first. She took Parker to Texas after their father's death and spent a substantial amount of time caring for her at Alterra until their brother Edward Parker removed their mother without notice to Jones. Ward then felt Jones should be their mother's guardian and expressed the opinion in a card written the day after Jones filed her application. At the time of the January 2007 temporary guardianship hearing, the parties did not dispute Parker's need for a temporary guardian. But only Jones requested appointment by the trial court. We find the trial court did not abuse its discretion by appointing Jones her mother's guardian and denying the applications of Ward and Boring. We overrule Parker's fifth issue and allied sub-issues.

In her sixth issue, Parker contends it was error to appoint a guardian of her estate because she possessed no property in Texas. Parker presents this argument in two sentences, without citation to authority or the record. An appellant's issue that is not supported with authorities, contains no record citations, and makes only conclusory arguments presents nothing for appellate review. *See* Tex. R. App. P. 38.1(h); *Tacon Mech. Contractors, Inc. v. Grant Sheet Metal, Inc.,* 889 S.W.2d 666, 671 (Tex.App.–Houston [14th Dist.] 1994, writ denied). Accordingly, we overrule Parker's final issue.

16

Having overruled each of Parker's issues and sub-issues, we affirm the judgment of the trial court.


James T. Campbell
Justice