

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|                  | §   |                         |
|------------------|-----|-------------------------|
| IN RE:           | §   | No. 08-21-00062-CV      |
|                  | §   |                         |
| AUTOZONERS, LLC, | §   | AN ORIGINAL PROCEEDING  |
|                  | §   |                         |
| Relator.         | §   | IN MANDAMUS             |
|                  | §   |                         |

## **CONCURRENCE**

I concur in the Court's judgment. Under our clear-abuse-of-discretion mandamus standard, when a case turns on factual or other matters committed to a trial court's discretion, we cannot grant relief unless the "trial court could have reached only one conclusion and that a contrary finding is thus arbitrary and unreasonable." *In re State Farm Lloyds*, 520 S.W.3d 595, 604 (Tex. 2017). On those discretionary matters, we may not substitute our judgment for the trial court, even if we see the issue differently. *Id.* "But with regard to questions of law and mixed questions of law and fact, a trial court has no 'discretion' in determining what the law is or applying the law to the facts, even when the law is unsettled." *Id.* (internal quotation marks omitted). The trial court here likely made two kinds of determinations to reach the outcome that it did: one of law and one or more of fact.

1

## THE LEGAL DETERMINATION

I agree with Autozoner that the trial court's original statement that the non-admitted counsel were "signing pleadings before [they got] admitted" would not have been legally correct given how pleadings are signed in our digital age. *See* TEX.R.CIV. P. 8 (the "attorney whose *signature* first appears on the initial pleadings for any party shall be the attorney in charge.") (emphasis supplied); TEX.R.CIV. P. 21(f)(7) (an electronically served document is signed by an "/s/" or scanned image of a signature). While Autozoner's non-admitted attorneys' signature block appears on the filed answer, neither had a line for a signature, and thus no "/s/" or digital image of a signature. But I agree with the majority that the trial court's "signing" statement in context was not the sole basis for the lower court's decision. The court also referenced "putting the cart before the horse" in *filing* pleadings, which implicates the inclusion of the signature blocks for non-admitted counsel, whether signed or not.

In effect, the trial court made a legal determination that a non-admitted attorney has entered an appearance by including their signature block on a pleading before the non-admitted attorney obtains approval of a pro hac vice motion. And they have done so even if the non-admitted attorneys' signature block adds the statement that a pro hac vice motion would be forthcoming.[1] No doubt, an appearance by a non-admitted attorney implicates the unauthorized practice of law, which is one of the grounds on which a trial court may deny an otherwise complete pro hac vice motion. *See* TEX.GOV'T CODE ANN. § 81.101(a) (practice of law includes "proceeding on behalf of a client before a judge in court"); TEX.RULES GOVERN.BAR ADM'N R. XIX(d) (engaging in the unauthorized practice of law in the state of Texas is a ground for denial of motion). The majority

---

[1] One of the attorney's signature blocks also states, "*Admitted pro hac vice*", which I assume to be a typographical error.

tacitly approves of this signature block rule by citing a line of cases that hold that a non-admitted attorney makes an appearance—is practicing law without a license in the State—by allowing their signature block to be included on a pleading before a pro hac vice motion has been granted. But we should quickly add that our opinion today is the first clear statement of that concept by a Texas court in a published opinion.

When Autozoner's answer was signed, one could not have found any controlling on-point Texas authority for the proposition that including non-Texas admitted counsel's signature block, with the notation that a pro hac vice motion would be forthcoming, constitutes an appearance. Rather, had Autozoner's counsel engaged in the kind of exhaustive search that our mandamus appellate process allows for, they would have found a two-paragraph unpublished memorandum opinion from the Dallas Court of Appeals that chastised two lawyers who were not members of the Texas Bar, but whose signature blocks appeared on a mandamus filing. *In re Hartford Life and Annuity Ins. Co.*, No. 05-14-00457-CV, 2014 WL 1613018, at *1 (Tex.App.--Dallas Apr. 22, 2014, orig. proceeding) (mem. op.). A Texas lawyer had signed the pleading, and the two non-Texas lawyers represented that they had been admitted to practice pro hac vice, presumably at a trial court below. But the two had not moved for or been granted permission to appear pro hac vice in the appellate court. *Id.*[2]

But as the mandamus petition also notes, a line of Texas cases in the sanctions context holds that a lawyer whose name appears on a pleading, but who has not signed it, is not subject to sanctions for signing a defective pleading. *See Yuen v. Gerson*, 342 S.W.3d 824, 828 (Tex.App.-

---

[2] The mandamus petition was summarily denied because it was not properly certified. So the pro hac vice issue was not the determining legal issue used to decide the case. Recently, the Dallas Court of Appeals cited *Hartford* in criticizing a non-admitted lawyer who both signed and included his signature block on a mandamus petition. *In re Pine Tree Capital, LLC*, No. 05-22-00105-CV, 2022 WL 500035, at *1 (Tex.App.--Dallas Feb. 18, 2022, orig. proceeding) (mem.op.).

-Houston [14th Dist.] 2011, pet. denied).  That rule, however, does not mean the non-signing attorney has not made an appearance.  Because an attorney whose name is on the signature block has appeared in the case, at least in the sense that they can later validly file a jurisdictional pleading independent of the lead counsel. *See City of Tyler v. Beck*, 196 S.W.3d 784, 787 (Tex. 2006) (refusing to discount motion for new trial simply because counsel other than lead counsel filed the pleading); *see also TNT Bestway Transp., Inc. v. Whitworth*, No. 05-96-01900-CV, 1999 WL 374158, at *6 (Tex.App.--Dallas June 10, 1999, pet. denied) (citing line of cases holding a jurisdictional pleading signed by non-admitted counsel is not a defect nullifying the pleading when counsel later is granted permission to appear pro hac vice).

The Government Code defines the "practice of law" by enumerated examples, such as among others, "preparation of a pleading" and "proceeding on behalf of a client before a judge in court."  TEX.GOV'T CODE ANN. § 81.101(a).  The enumerated examples do not specifically mention inclusion of a signature block on a pleading.  But the list of examples is not exclusive, as section 81.101(b) states that the "definition in this section" does not "deprive the judicial branch of the power and authority under both this chapter and the adjudicated cases to determine whether other services and acts not enumerated may constitute the practice of law."  *Id.* § 81.101(b); *Unauthorized Practice Comm. of the State Bar of Texas v. Cortez*, 692 S.W.2d 47, 51 (Tex. 1985) (legislative  intent of § 81.101(b) recognizes "the inherent power of the courts to determine what is the practice of law on a case by case basis, unconfined by the statute.").

Our Court's own research found a narrow line of out-of-state authority that faults attorneys who allow their signature block to appear on a pleading before they have been admitted pro hac vice.  The Mississippi Supreme Court so held in *In re Williamson*, 838 So.2d 226, 235 (Miss. 2002), *cert. denied*, 540 U.S. 821 (2003):  "In the future, attorneys are hereby noticed and

4

cautioned that a foreign attorney will be deemed to have made an appearance in a Mississippi lawsuit if the foreign attorney signs the pleadings *or allows his or her name to be listed on the pleadings.*" (emphasis supplied).[3] The case has been followed in Mississippi state courts, and federal courts hearing Mississippi cases. *See Isom v. Valley Forge Ins. Co.*, 716 F.App'x 280, 288 (5th Cir. 2017) (unpublished) (finding no abuse of discretion when trial court disqualified attorneys who had allowed their names to be listed on the complaint and attempted to negotiate a settlement before the district court acted on their applications for admission to practice pro hac vice); *Reech v. Sullivan*, No. 3:18-CV-35-HSO-LRA, 2018 WL 1698303, at *2 (S.D. Miss. Apr. 5, 2018) (same). The U.S. Virgin Islands follows a similar rule. *See Matter of Nevins*, 60 V.I. 800, 804 (V.I. 2014) (appellate court denied pro hac vice motion when brief that party filed included the signature block of the attorney seeking admission; that the brief included the words "*pro hac vice* application pending" after the attorney's name "does not render his conduct any less improper").

I could agree that including a signature block that states a pro hac vice motion is "forthcoming" does not negate that counsel has appeared when the answer was filed. Stated otherwise, including an attorney's signature block with a reference to complying with the rules for

---

[3] The non-admitted attorney in that case had signed up a medical malpractice case through his in-state advertising. *In re Williamson*, 838 So.2d at 230. The original petition included his signature block along with local Mississippi counsel. *Id*. The non-admitted counsel did not file a motion for pro hac vice until opposing counsel moved to strike the pleading. *Id.* at 230-31. And the original pro hac vice motion that he filed failed to disclose several cases in which he made appearances in the State. *Id.* at 231. The *Williamson* decision was not unanimous as four Justices concurred, two dissented without opinion, and two dissented with an opinion that included these criticisms:

> The Court's holding today illustrates an antiquated approach to a modern day question of law concerning what is, ultimately, the right of a citizen to choose legal representation. . . . This holding and the trial court's according ruling are the *first* of any court to this effect. Thus, Miller's actions *prior* to the ruling could not possibly constitute a violation, much less one sufficient to deny the pro hac vice motion. . . . Today, however, the Court foists a completely senseless—a radical— regulation upon the legal profession, which will ultimately hurt none other than the citizens of this state who have a right to counsel of their choice

*Id.* at 239, 243 (McRae, P.J., dissenting).

non-admitted attorneys in the future, is different from complying with the rules at the time of the answer. I analogize the situation to filing a special appearance. A party who files a general denial and then a few days later files a special appearance has waived the issue, because the first pleading constituted an appearance. *See In re Guardianship of Parker*, 275 S.W.3d 623, 628 (Tex.App.--Amarillo 2008, no pet.). If the special appearance is filed along with a denial, however, the party has only conditionally appeared, and there is no waiver of a jurisdictional defense. TEX.R.CIV.P 120a.[4] Because in a technical sense, Autozoner's non-admitted attorneys appeared when the answer was filed, the trial court did not err in concluding they technically violated the unauthorized practice of law rules for our state.

If that technical violation was the only issue before us, I might be inclined to follow the dissenting rationale expressed by two justices in the *In re Williamson* case. 838 So.2d at 239 (McRae, dissenting) ("the majority holds Miller to a standard that *did not* exist, and worse appears to hold him guilty of violating it.") (emphasis original). As discussed above, when the answer was filed, there was no controlling Texas authority that would have guided counsel in preparing the answer. Our research has found only one state and one U.S. territory that have enunciated the rule. And looking to other states, some attorneys have apparently engaged in this practice without adverse consequence. *See Whitworth*, 1999 WL 374158, at *6 (collecting cases in which non-admitted counsel signed significant pleadings and then later obtained permission to appear pro hac vice). As with the dissent in *Williamson*, applying the rule retroactively, gives me pause. But going forward in Texas, attorneys should be on notice that they should omit non-admitted attorneys

---

[4] Perhaps the situation would be different here if the non-admitted attorney's signature block stated, "subject to a *pro hac vice* motion, contemporaneously filed" or words to that effect. But the wiser practice would be to omit the non-admitted attorney altogether until a pro hac vice admission is approved, because including the non-admitted attorneys on the answer adds nothing substantive to the pleading, and in Texas, pleadings may be freely amended without leave of court. TEX.R.CIV.P. 63.

6

on a signature block until a pro hac vice application is granted.

## ABUSE OF DISCRETION ISSUES

The real party in interest also suggests that the trial court engaged in its discretionary fact finding function and could have denied the pro hac vice motions because (1) the non-admitted attorneys drafted a pleading (which they deny), (2) the non-admitted attorneys have appeared frequently before Texas courts, and (3) one engaged in misconduct sufficient to constitute "good cause" for denying the motion. I agree that Autozoner has not shown a clear abuse for the first of these discretionary determinations, but I disagree with my colleagues as to latter two issues.

At the hearing on a motion to reconsider, the real party in interest argued that the non-admitted attorneys did not simply allow their signature blocks to appear on the answer. Rather, they were engaged in drafting the pleading. That is, the claim was made that the non-admitted attorneys did more than just review the answer as they testified to. The argument focused on a comparison of the Texas counsel's signature block as it appears on pleadings that only he is listed on and the answer which also includes the non-admitted counsel.[5] And to be sure, even the pleadings in this case demonstrate that the Texas lawyer's signature block as it appears in the answer is markedly different from how the signature block appears in a pleading that Texas counsel filed on his own.[6] I do not discount that national or regional counsel will often review pleadings filed in the various jurisdictions that they administer, if for no other reason than to maintain

[5] While showing the trial court a different pleading from a different case, real-party-in-interest's counsel argued: "And more importantly, look at the signature block. Look how he prepares his signature block--Now, look at the defendant's answer in this case, the exhibit they attached to their motion. It is nowhere near this."

[6] Comparing Texas counsel's signature block on the answer (which also contains the non-admitted attorney's signature block) to that on the Notice of Hearing for the pro hac vice hearing (containing only Texas counsel's signature block) shows these obvious differences: (1) the placement of the signature line; (2) the bolding versus non-bolding of the firm name; (3) the omission versus inclusion of a State Bar Number; (4) the reference to "fax" versus "Telefax"; (5) the appearance of the email addresses. In the answer, Texas counsel's signature block mirrors the same style as the out-of-state's counsel.

7

consistency in a client's publicly pleaded positions. But the trial court could have found that the altered signature block is more suggestive of draftsmanship, rather than editing for consistency. In other words, the signature blocks are markedly different and would support an inference that the documents were prepared by different authors, with the further inference that the non-admitted attorneys drafted the answer. And the Government Code expressly provides that preparation of a pleading is part of the practice of law. TEX.GOV'T CODE ANN. § 81.101(a).

The real party in interest advances other rationale under which the trial court might have denied the pro hac vice motions, some which are discussed in the majority opinion. I also write separately because I conclude none are compelling, nor would support exclusion of both attorneys (Tracy E. Kern and Laurie M. Riley).

One other reason suggested by the majority for denying the pro hac vice motions is that attorneys Kern and Riley "frequently" appear in Texas courts. Rule 19 permits the trial court to deny a pro hac vice motion "if the court determines that the non-resident attorney . . . has been appearing in courts in Texas on a frequent basis[.]" TEX.RULES GOVERN.BAR ADM'N R. XIX(d). The rule does not define what constitutes a "frequent basis." The rule does require the applicant to list "all cases and causes . . . in Texas courts in which the non-resident attorney has appeared or sought leave to appear or participate within the past two years[.]" *Id.* Rule 19(a)(3).[7]

Riley's moving affidavit swore she had not moved to appear in *any* Texas court in the past two years. At the hearing, Attorney Riley was *not* asked about other cases she handled in Texas, other than one federal matter. Kern's moving papers disclosed one other Texas case, also in the past two years. At the hearing, on questioning by the real party in interest's counsel, Kern agreed

---

[7] A separate subpart of the rule contemplates that the trial court can inquire into the frequency issue, and I do not read that rule as limiting the trial court's inquiry to only a two-year period as suggested by some of the argument below. *Id.* at Rule 19(d).

that she has appeared "a number of times" in her 30-year law career in Texas, but only once in the past two years. She acknowledged that her application to appear pro hac vice in the one recent Texas state case, that she may have listed another prior Texas state case out of Hidalgo County.

The majority opinion concludes that the two prior state cases that Kern acknowledged, plus the application here, could constitute the "frequent" appearance in a Texas court. I believe it is unnecessary and unwise to reach that conclusion. First, whether two cases, plus the application here, constitutes a "frequent basis" is questionable at best. The Merriam–Webster Collegiate Dictionary defines "frequent" as: "common, usual" and "often repeated or occurring" and "acting or returning regularly or often". *Frequent*, MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003). Another dictionary defines the term as "constant, habitual, or regular". *Frequent*, WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY (2001). One or two prior cases, plus the application here, is simply not frequent.

The frequency rationale is also undercut because attorney Riley, whose motion was also denied, had not appeared in any other Texas state case, and only one federal case (which the majority does not consider as part of its rationale). Thus frequency could not have been the rationale the trial court relied on below, and even if it were, it could not apply to attorney Riley at the very least.

Finally, the majority concludes that references to attorney Kern in an unpublished appellate opinion might have served as good cause to deny her admission. *Alexander v. Monsanto Co.*, 396 F.App'x 137, 139 (5th Cir. 2010). As with the frequency issue, the fact that the case involved only attorney Kern, and not attorney Riley, is the best evidence that the trial court could not have relied on that basis to exclude both attorneys. Even at that, the bare facts of the case as reported by the Fifth Circuit are an insufficient basis to exclude attorney Kern. The case involved a party

9

attempting to overturn an adverse jury verdict based on claimed error in Kern's jury argument in voir dire and closing. The Fifth Circuit found that challenges to three of the statements urged on appeal lacked any merit. *Id.* at 140. The court's opinion states that one jury argument where counsel argued what the jury needed to find to render a verdict "was not entirely correct." *Id*. at 139. As to a question asked in voir dire, the court agreed that the "implication" of the question was "inaccurate and unwarranted." *Id*. at 140. No sanctions or disciplinary proceedings were at issue. None of the challenged statements amounted to reversible error. At most, the trial court here had an appellate opinion summarizing the events of a case tried more than a decade ago. A Westlaw or Lexis search for cases involving alleged improper jury argument will turn up thousands of reported Texas appellate decisions. Short of an appellate opinion upholding a disciplinary infraction, sanction, or egregious error meriting reversal, I would be disinclined to weaponize run of the mill claims of improper jury argument as a ground to deny a client their chosen counsel. For these reasons, I reject the added rationale suggested by the majority in section III(b) of the opinion.

\* \* \* \* \* \* \*

In deciding an application for pro hac vice admission, a trial court must balance important competing interests, including a client's right to choose its own counsel and the ability of a state to regulate the conduct of those appearing in its courts. *Keller Indus., Inc. v. Blanton*, 804 S.W.2d 182, 185 (Tex.App.--Houston [14th Dist.] 1991, no pet.) ("The right of a litigant to be represented by the attorney of his choice is a significant one."). I would add the consideration of comity, because how we treat out-of-state regional and national counsel, may influence how Texas regional and national counsel are treated elsewhere. *See, e.g.*, *Willett v. State*, 970 S.W.2d 804-06 (1998) (per curiam ) (denying Texas counsel's pro hac vice motion to participate in the oral argument of

the case based on Arkansas comity provision); *Jensen v. Wisconsin Patients Comp. Fund*, 621 N.W.2d 902, 905 (Wis. 2001) (stating that while pro hac vice admission is a privilege rather than a right, Wisconsin as a  matter of comity "cheerfully conceded the privilege to attorneys of sister states to engage in the conduct of trials in this state."); *Matter of Fletcher*, 655 N.E.2d 58, 59 (Ind. 1995) (per curiam) ("Such appearances in one state by an attorney regularly admitted and licensed to practice in another state are generally permitted as a matter of comity[.]").

Based on the record, however, I cannot conclude that the mandamus standard has been met. For these reasons, I concur.

JEFF ALLEY, Justice

June 7, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.

11